

FILED

'MY 21 PM 4:20

CLERK, U.S. DISTRICT COURT
MODLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA


DAVID ACOSTA

                              Plaintiff  6:04CV 761-ORL-28-JGG

vs.


Marie D. Campbell

Gregg Dreilinger

Law Offices of David J. Stern, P.A.
                                            Rec# 15298
                        Defendant.              #150
Civil Action No. _____;11]        S.I.


### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, David Acosta, a natural man and proceeding
in pro per, unschooled in law and asks the court to take Judicial
Notice of the enunciation of principles as stated by The United
States Supreme Court, in <u>Haines v Kerner 404 U.S. 519 (1972)</u>,
that said all litigants defending themselves <u>*must*</u> be afforded the
opportunity to present their evidence and that the Court should
look to the substance of the complaint rather than the form.

   a. <u>Conley v Gibson 355 U.S. 41, 45-46 (1957)</u>, and <u>Montanye v
      Haymes 427 U.S. 236 (1976)</u>, where the Supreme Court said,
      "It was improper for the District Court either to dismiss
      the complaint or to grant summary judgment for the Defendant
      <u>without a trial of the facts</u>. Quoting <u>Haines v Kerner 404
      U.S. 519; Conley v Gibson 355 U.S. 41</u>. Defendant
      respectfully reserves the right to demand a Jury Trial.

b. In <u>Platsky v CIA, 953 F.2d 26 (2nd Cir. 1991)</u>, the Circuit Court of Appeals allowed that the District Court should have explained to the litigant proceeding without a lawyer, the correct form to the plaintiff so that he could have amended his pleadings accordingly.   Plaintiff respectfully reserves the right to amend this answer.

## I. INTRODUCTION

1.    This is an action for actual and statutory damages brought by Plaintiff, David Acosta, an individual consumer, against  Defendants Marie D. Campbell, Gregg Dreilinger and Law Offices of David J. Stern, P.A. for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et seq</u>. (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

## II.   JURISDICTION

2.    Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  Venue in this District is proper in that the defendants transact business here and the conduct complained of occurred here.

## III.   PARTIES

3.    Plaintiff, David Acosta, proceeding sui juris, is a natural person residing in Longwood, Seminole County, Florida and is a consumer as defined under 15 USC 1692 et seq.

4.    Defendant, Law Offices David J. Stern, P.A., is a Florida corporation engaged in the business of collecting debt in this state with its principal place of business located at 801 S.

University Drive, Suite 500, Plantation, Florida.  The principal purpose of Defendant is the collection of debts in this state and defendant regularly attempts to collect debts alleged to be due another.

5.    Defendants Marie D. Campbell and Gregg Dreilinger are natural persons employed by Defendant Law Offices of David J. Stern, P.A. as a collector at all times relevant to this complaint.

6.    Defendants are engaged in the collection of debts from consumers using the mail and telephone.  Defendants regularly attempt to collect consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

IV.    BACKGROUND AND FACTUAL ALLEGATIONS

7.    On July 1, 2003 Plaintiff received notice by letter from Plaintiff stating that the Law Offices of David J. Stern was to begin foreclosure proceedings and that any questions regarding foreclosure should be addressed to said firm.  See Exhibit DD-1.

8.    On July 12, 2003 Plaintiff sent a Notice of Dispute and Debt Validation Request seeking verification of the alleged debt to the Law Offices of David J. Stern. P.A.  See Exhibit DD-2.

9.    On July 12, 2003 Plaintiff also sent a Qualified Written Request, pursuant to Plaintiff's rights as a consumer under the Real Estate Settlement Practices Act, to the Law Offices of David J. Stern. P.A.  See Exhibit DD-3.

10.    The Notice of Dispute and Debt Validation Request was received and signed for by the Defendant, Law Offices of David J.

Stern, by someone authorized to sign certified mail receipts on July 16, 2003. The signature is not legible and the identity of the person who signed is unknown. See Exhibit DD-4.

11. On July 16, 2003 Defendants filed the summons and complaint of foreclosure without first providing the requested verification of the disputed debt as prescribed by Florida law.

12. On July 24, 2003 Defendants caused to be served upon Plaintiff a summons and complaint in a foreclosure action at approximately 7:20 am. Said summons and complaint was served by Sheila M. Huff, special process server.

13. The summons and complaint was 27 pages in length and the notice as required by the Fair Debt Collection Practices Act, 15 USC 1692(g), as amended, was found on page 9. See Exhibit DD-17.

14. Defendant's summons and complaint, in the collection of an alleged mortgage debt, warned Plaintiff on the first page that Plaintiff had 20 days to respond to the complaint, and failing to respond could result in the loss of money, wages, and property.

15. Defendant's summons and complaint mentioned the Fair Debt Collection Practices Act by title and statute but did not provide any information regarding Plaintiff's rights under said statute. The language of the summons referring to the Fair Debt Collection Practices Act was directed to the person serving the summons, wherein it read: "YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint/amended complaint or petition and Notice required by the Fair Debt Collection

Practices Act, 15 U.S.C. Section 1692(g), for verification of the debt in this action on defendant(s)."

16.   On August 12, 2003 Plaintiff David Acosta filed its answer to the complaint and also sent a letter to Defendant Marie D. Campbell.  The letter informed Defendant of Plaintiff's rights under the Fair Debt Collection Practices Act and urged not to overlook providing competent evidence of the validity of the disputed debt.  See Exhibit DD-5.

17.   On or about October 1, 2003 Plaintiff received a letter from Defendant Gregg Dreilinger, wherein the letter and its contents claimed to be validation of the disputed debt.  In the envelope accompanying the letter were:  a) a copy (unverified in any manner) of the alleged promissory note; b) a copy (unverified) in any manner) of the disputed mortgage; c) a copy (unverified in any manner) of the assignment of mortgage; and d) a copy of a Corporate Notice of Name Change.  See Exhibits DD-6, DD-7, DD-8, and DD-9.

18.   Despite the guidance provided by Plaintiff, Mr. Dreilinger and the Law Offices of David J. Stern, P.A. did not provide verification as prescribed by Federal and Florida law and elected to resume collection efforts – failure of verification notwithstanding.

19.   Exhibit DD-12, sent to Plaintiff with Mr. Dreilinger's letter of November 14, 2003 is made up of 10 pages with numbers on them where the document name is titled:  "Amanda".  The information on these pages is not clear nor could easily be interpreted.  There is no identifying information indicating this

is a debt of David Acosta, Defendant.  No address appears on any of the documents.  Only one instance of the name Acosta appears on each page.  Each page ends with "Display Complete" followed by "*NO*".

20.  The documentation sent by Defendants as verification of the alleged debt is not accompanied by any sworn statement or affidavit presented by the preparer of the "statements".  Nor are the alleged "statements" certified in any way.  All 10 pages are unintelligible.

21.  On October 2, 2003 Plaintiff responded to Defendants Gregg Dreilinger and Law Offices of David J. Stern, P.A. indicating the verification and validation he provided was insufficient and providing the definition of verification, citing both Black's Law Dictionary 7th Edition (1999) and _H.A.M.S. Company v. Electric Contractors of Alaska, Inc.,_ 563 Pacific Reporter 258, 260(1977).  See Exhibit DD-10.

22.  Plaintiff asked Defendant Gregg Dreilinger and Law Offices of David J. Stern, P.A. to provide verification with certified documentation that would be admissible evidence. Plaintiff also provided Defendants with an affidavit that could be filled out and notarized to serve this purpose.

23.  On or about November 15, 2003 Plaintiff received from Defendants Gregg Dreilinger and Law Offices of David J. Stern, P.A. a letter with 10 pages of what Defendant Gregg Dreilinger referred to in the letter as payment history.  Included in the letter were Defendant's motions to strike Defendant's affirmative defenses and another motion to strike Plaintiff's demand/request

for jury trial for the foreclosure action.  Notices of hearing on each of the above motions were also included.  See Exhibits DD-11, DD-12, DD-13, DD-14, and DD-15.

24.  At no time has Plaintiff been in receipt of any verification of the disputed debt as requested by Plaintiff. Debt collection efforts by all of the Defendants, Marie D. Campbell, Gregg Dreilinger, and Law Offices of David J. Stern, P.A. did not cease as required by 15 U.S.C. 1692 et. Seq.  The resulting pursuit of collection efforts by this law firm are clear violations of the Fair Debt Collection Practices Act, actionable under Federal Law.

## V. CLAIM FOR RELIEF

25.  Plaintiff repeats and realleges and incorporates by reference to the foregoing paragraphs.

26.  Defendants violated the FDCPA.  Defendants' violations include, but are not limited to, the following:

a. The Defendants violated 15 U.S.C. § 1692g(b) by failing to provide verification of the debt and continuing its debt collection efforts after the Plaintiff had disputed the debt in writing pursuant to 15 U.S.C. § 1692g debt validation rights.

b. The Defendant violated 15 U.S.C. § 1692g by serving Plaintiff with a summons and complaint in a manner that overshadowed the notice of validation rights and would create confusion for a least sophisticated consumer about his rights.

c. The Defendant violated 15 U.S.C. § 1692c(a)(1) by contacting Plaintiff, through its process server, at 7:20 am on July 24, 2003, a time disallowed by the statute.

15.   As a result of the foregoing violations of the FDCPA, defendants are liable to the Plaintiff David Acosta for declaratory judgment that defendants' conduct violated the FDCPA, actual damages, statutory damages, and costs and attorney's fees.

WHEREFORE, Plaintiff David Acosta respectfully requests that judgment be entered against defendants Marie D. Campbell, Gregg Dreilinger and Law Offices of David J. Stern, P.A. for the following:

A.   Declaratory judgment that defendants' conduct violated the FDCPA;

B.   Actual damages;

C.   Statutory damages pursuant to 15 U.S.C. § 1692k;

D.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1692k and [rule], § [rule]; and

E.   For such other and further relief as the Court may deem just and proper.

Respectfully submitted,
David Acosta, Plaintiff
3229 Yattika Place
Longwood, FL 32779

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff David Acosta demands trial by jury in this action.

David Acosta, Plaintiff

## VERIFICATION

I, David Acosta, hereby certify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

David Acosta

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via first class mail to Gregg R. Dreilinger, attorney for the Plaintiff, 801 S. University Drive, Suite 500, Plantation, Florida 33324on this 20th day of May 2004.

_____
DAVID ACOSTA
3229 Yattika Place
Longwood, Florida 32779
407-333-0623

**EXHIBIT DD-1**

CITIMORTGAGE INC
PO BOX 790014
ST LOUIS, MO  63179

July 1, 2003

DAVID ACOSTA

3229 YATTIKA PL
LONGWOOD FL  32779-3115

RE:   3229 YATTIKA PLACE
      LONGWOOD FL  32779
      CMI LOAN #:9080054118

Dear Mortgagor:

This letter will serve as notice that your mortgage is still in default.  All reasonable
efforts afforded you to cure this default have failed.

Your loan has been referred to the following legal firm to begin foreclosure
proceedings:

LAW OFFICES OF DAVID J STERN
801 S UNIVERSITY
STE 500
PLANTATION FL 33324-
(954)233-8000

If you have any questions regarding foreclosure proceedings on your mortgage, please
contact the above attorney.

Sincerely,

Foreclosure Department

**EXHIBIT DD-2**



David Acosta
3229 Yattika Place
Longwood, FL 32779

CitiMortgage, Inc.
c/o Law Offices of David J. Stern
801 South University, Suite 500
Plantation, FL 33324

July 12, 2003

RE    **Notice of Dispute and Debt Validation Request, Account or Loan No. 9080054118**

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL.  NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

Greetings:

A letter from CitiMortgage dated July 1, 2003 indicated that all questions regarding this account should be directed to you as their agent.

This is not a refusal to pay, but a notice that your claim is disputed.  This is a request for validation made pursuant to the Fair Debt Collection Practices Act.  I dispute your debt collection-related allegations, deny the same, and demand strict proof and verification thereof.  This dispute, denial, and demand are made in accordance with federal law.  Please complete and return the attached disclosure request form.

Please limit your communication with me to writing only.  If I receive any telephone calls from your company, I will consider them to constitute harassment.  Please be advised that unwanted telephone calls are a class 1 misdemeanor in this state and I will file a complaint against the caller with the attorney general's office.  I maintain a telephone log of each phone call and in some cases, make an audio recording when necessary.

Be advised that you have the right to remain silent.  If you ignore this notice and contact me by telephone, you and your employees agree to allow me to make an audio recording of our conversation and you and your employees agree to allow the recording and any other information obtained to be used against you and your employees in a court of law.  I will accept only your written communication.

Be advised that I am not requesting a "verification" that you have my mailing address, I am requesting a "validation;" that is, competent evidence that I have some contractual obligation to pay you.

You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under federal and state law.  You may wish to consult with a competent legal advisor before your next communication with me.

Your failure to satisfy this request within the requirements of the Fair Debt Collection Practices Act will be construed as your absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorney fees.

Best regards,

David Acosta

# CREDITOR DISCLOSURE STATEMENT

Name and Address of Collector (assignee):

_____

Name and Address of Debtor:

_____

Account Number(s):

_____

What are the terms of assignment for this account?  You may attach a facsimile of any records relating to such terms.

_____

Have any insurance claims been made by any creditor or assignee regarding this account?
Yes / no

_____

Has the purported balanced of this account been used in any tax deduction claim?
Yes / no

_____

Please list the particular products or services sold by the collector to the debtor and the dollar amount of each:

_____

Upon failure or refusal of collector to validate this collection action, collector agrees to waive all claims against the debtor named herein and pay debtor for all costs and attorney fees involved in defending this collection action.


X_____          _____
Authorized signature for Collector          Date

Please return this completed form and attach all assignment or other transfer agreements that would establish your right to collect this debt.  Your claim cannot be considered if any portion of this form is not completed and returned with the required documents.  This is a request for validation made pursuant to the Fair Debt Collection Practices Act.  If you do not respond as required by this law, your claim will not be considered and you may be liable for damages for continued collection efforts.

## CERTIFICATE OF SERVICE

I hereby certify that I served :

**"Notice of Dispute and Debt Validation Request"**

by sending a true and correct copy thereof, thereby certified as such, via first class mail to the following attorneys, and/or agents, and/or trustee at the addresses indicated below on this 15 day of July, 2003.

      LAW OFFICES OF DAVID J STERN
      801 S UNIVERSITY, SUITE 500
      PLANTATION, FL 33324

Attorneys for Citimortgage, Inc.

David Acosta

David Acosta
3229 Yattika Place
Longwood, FL 32779

September 12, 2003

CitiMortgage, Inc.
c/o Law Offices of David J. Stern
801 South University, Suite 500
Plantation, FL 33324

RE    Qualified Written Request, Account or Loan No. 9080054118

Greetings:

I have been advised by Citimortgage to direct my inquiries to your law firm regarding the above account.

Please be advised of your obligation to answer this qualified written request to obtain all records and documents pertaining to the account herein. This request is made pursuant to the Real Estate Settlement and Procedures Act (RESPA). I have reason to believe that certain disclosures have been withheld in violation of the Truth in Lending Law and that various loan servicing errors may have occurred. Therefore, in order to protect my interests, I am requesting copies of the following records relating to the account number stated herein:

1. The original promissory note,

2. The security instrument,

3. Any modifications, indorsements, extensions, addenda, and all information related to items 1 and 2 above,

4. The complete pay history from the date or origin, including any portion of the history that originated from previous assignors,

5. Promissory note deposit and transaction account records

6. All records of indorsement of the note beginning with the first.

7. The name or names of all custodians of the note.

8. If the note has been lost, please provide me with copies of the following:

    a. The Government National Mortgage Association (GNMA) pool number of the bond issued for the lost note,

    b. Name of issuer purchasing the bond,

    c. Current issuer loan number,

    d. FHA/VA case number, if applicable

    e. Name of original mortgagor,

    f. Physical address of property,

g. Mortgage recording information,

h. Name of surety or insurance company (obligor),

i. Date the bond was executed by surety or insurance company,

j. Name of surety or insurance company which executed bond,

k. Name and signature of representative for surety or insurance company,

l. Date the note was discovered missing, and

m. Possible reasons for the lost note.


Please remember to include the appropriate power of attorney and certification with your response and the records. Please certify by affidavit the name and address of the current legal holder/owner of the note associated with this account.

As the purported holder, you have assumed all rights and responsibilities of the assignor and you are required by law to provide me with the records requested. If control or custody of these records is maintained by your assignor, you must forward this request to each and every assignor and obtain the missing records from each to be forwarded onto me.

Be further advised that if you fail or refuse to produce these records as required by law, I will institute a civil action against you for the purpose of compelling the production of these records under court order. You may respond within ten (10) days and produce these records within forty (40) days following your response. If you fail to produce these records you will be in default.

I have not yet received any of the requested documentation validating the alleged debt, by affidavit, arising out of the above-referenced transaction. This request was made to you on 7/14/2003.

Please be advised that while responding to this Qualified Written Request does not violate 15 USC 1692g, because I am asking for the information, collection efforts on this account may not continue until you have provided the prior request of debt validation. Any action your firm takes without providing the requested validation will constitute new FDCPA violations.

Best regards,

David Acosta
3229 Yattika Place
Longwood, FL 32779

**EXHIBIT DD-4**

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

FORT LAUDERDALE FL 33324

| | |
|---|---|
| Postage | $ $0.60 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.65 |

LONGWOOD FL 32750
0559
07   Postmark Here
JUL 1  2003
USPS
07/14/2003

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, June 2002           See Reverse for Instructions

7002 2030 0005 9134 8873

---

**SENDER: COMPLETE THIS SECTION**

■ Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Citi Mortgage
c/o Law Offices of DAVID J. Stern
801 Sewell University, Suite 500
Plantation, FL 33324

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

**RECEIVED**
JUL 14 2003

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)   7002 2030 0005 9134 8873

PS Form 3811, August 2001        Domestic Return Receipt        2ACPRI-03-Z-0965

**EXHIBIT DD-5**

August 12, 2003

David Acosta
3229 Yattika Place
Longwood, FL 32779

Ms. Marie D. Campbell
Law Offices of David J. Stern, P.A.
801 S. University Drive, Suite 500
Plantation, FL 33324

Re:   Citimortgage, Inc. v. David Acosta, et al.

Dear Ms. Campbell:

Enclosed please find a copy of my Answer to the Complaint filed by you on July 16, 2003.

Please be advised that as of the date of this letter you have violated Federal Law by serving me with this complaint prior to providing validation of the debt you claim I have with your client. Citimortage, Inc. sent me a letter stating that my communications should be directed to your firm regarding the account in dispute. On July 12, 2003 I wrote you and disputed the validity of this debt pursuant to USC 15 § 1692g. You received my notice and on the same day filed a complaint against me. **This is the first violation.**

Next, acting on your behalf and conducting a debt collection activity, your process server delivered the complaint at 7:20 am, which is a time that is outside what is allowed by law. **This is the second violation.**

Next, in spite of the recent court decision against your firm in *Pablo Martinez v. Law Offices of David J. Stern*, November 2002, you failed to give me adequate notice under the Fair Debt Collection Act by burying the notice on page 8 of the complaint as this was the first communication from you to me. This is exactly what the court said your firm did wrong when they found you in violation of 15 § 1692g. **This is a third violation.**

I am reserving the right to commence an action against your firm regarding these violations of Federal Law.

I urge you not to overlook my request for competent evidence, as validation, that I owe your client any money. I will not accept mere suggestions of a debt founded on hearsay evidence. Anything less than a sworn affidavit, based on personal knowledge, verifying the validity of the debt, along with the items requested in my letter, will be deemed insufficient and non-responsive. **Of course, any action you take attempting to collect on this debt, including any filings relating to the action you have commenced, without first providing this validation, will constitute more violations of FDCPA.** Accordingly, should the court rule in a similar manner to the above-mentioned case, you will be responsible for attorney's fees, costs of the suit, and possibly punitive damages in light of your firm's conduct since the recent court decision.

Please be advised that I am aware of my rights and intend to exercise them under the law.

Please govern yourself accordingly.

Sincerely,

David Acosta

**EXHIBIT DD-6**

## FIXED/ADJUSTABLE RATE NOTE
(1 Year Treasury Index - Rate Caps)  **Loan No. 0012073**

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

**MARCH 24, 2000**  **WEST LOS ANGELES  CALIFORNIA**
[Date]  [City]  [State]

**3229 TATTIKA PLACE, LONGWOOD, FLORIDA 32779**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 460,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of       7.625   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on  **MAY  2000**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **APRIL  1**       , 2030   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **11150 WEST OLYMPIC BOULEVARD, #1160, WEST LOS ANGELES, CALIFORNIA 90064**
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,255.85   . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay may change to an adjustable interest rate on the first day of **APRIL   , 2005**   , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

FLORIDA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument 3522

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 750/1000** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, the rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.625** % or less than **5.625** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.625** %. **2.750**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of the change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

FLORIDA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument 3522



**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DAVID ACOSTA                     Borrower                                          Borrower

_____ (Seal)          _____ (Seal)
                                 Borrower                                          Borrower

_____ (Seal)          _____ (Seal)
                                 Borrower                                          Borrower

[SIGN ORIGINAL ONLY]

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

IMAGE01 : FL-03-36852-2  07/02/2003 04:20:13pm

**EXHIBIT DD-7**

MARYANNE MORSE
CLERK OF CIRCUIT COURT

SEMINOLE COUNTY FL
RECORDED & VERIFIED

518673

2000 APR 5 PM 3: 03

RETURN TO:
LAWYERS TITLE
160 INTERNATIONAL PKWY.
#180
HEATHROW, FL 32746

WHEN RECORDED MAIL TO:

MORTGAGE CAPITAL ASSOCIATES, INC.
11150 WEST OLYMPIC BOULEVARD, #1160
WEST LOS ANGELES, CALIFORNIA 90064

930.00              1610.00

OFFICIAL RECORDS
BOOK 3828 PAGE 0303
SEMINOLE CO., FL

Loan Number 0012073

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **MARCH 24, 2000**
The mortgagor is **DAVID ACOSTA, A MARRIED MAN,** joined by his wife, Elizabeth Acosta

("Borrower"). This Security Instrument is given to
**MORTGAGE CAPITAL ASSOCIATES, INC.  A CALIFORNIA CORPORATION**
which is organized and existing under the laws of **CALIFORNIA** , and whose address is
**11150 WEST OLYMPIC BOULEVARD, #1160, WEST LOS ANGELES, CALIFORNIA
90064**
("Lender"). Borrower owes Lender the principal sum of
**FOUR HUNDRED SIXTY THOUSAND AND 00/100************
Dollars (U.S. $460,000.00 ).** This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable
on **APRIL 1, 2030** . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;
(b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
**SEMINOLE** County, Florida:
**LOT 40, ALAQUA PHASE II, ACCORDING TO THE PLAT THEREOF AS RECORDED IN
PLAT BOOK 38, PAGE(S) 27 TO 29, OF THE PUBLIC RECORDS OF SEMINOLE
COUNTY, FLORIDA.
A.P.N.: 15-20-29-5JY-0000-0400**

which has the address of **3229 YATTIKA PLACE          LONGWOOD**
                                    [Street]                                    [City]
**Florida        32779**        ("Property Address");
                    [Zip Code]

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3010 9/90 (page 1 of 7 pages)

Exhibit-A

OFFICIAL RECORDS
BOOK          PAGE

3828     0304

SEMINOLE CO.,FL

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

Form 3010 9/90 (page 2 of 7 pages)

FL2 MTG



BOOK      PAGE
3828      0305
SEMINOLE CO.,FL

4.  Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any.  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  Hazard or Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.  The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or

Form 3010 9/90 (page 3 of 7 pages)



OFFICIAL RECORDS
BOOK          PAGE

3820      0305

SEMINOLE CO.,FL

statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.  Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.  Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the

Form 3010 9/90 (page 4 of 7 pages)



OFFICIAL RECORDS
BOOK        PAGE

3828      0307

SEMINOLE CO.,FL

sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14.  Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15.  Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.  Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this

Form 3010 9/90 (page 5 of 7 pages)



Case 6:04-cv-00761-JA-DAB    Document 1    Filed 05/21/2004    Page 27 of 86

MAGE01 : FL-03-36852-2  07/02/2003 04:20:13pm    Page 6 of 12

OFFICIAL RECORDS
BOOK          PG.

3828    0302

SEMINOLE CO., FL.

Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. Attorneys' Fees. As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys'

Form 3010 9/90 (page 6 of 7 pages)



FL3 1490

OFFICIAL RECORDS
BOOK        PAGE
# 3828    0309

SEMINOLE CO.,FL

reversed by an appellate court.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [X] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____(Witness)    _____(Witness)

_____(Seal)    _____(Seal)
DAVID ACOSTA            - Borrower            - Borrower

_____(Seal)    _____(Seal)
Elizabeth Acosta            - Borrower            - Borrower

_____(Seal)    _____(Seal)
- Borrower            - Borrower

This Instrument was prepared by: MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION

STATE OF ' PA
COUNTY OF  Lancaster

The foregoing instrument was acknowledged before me this    2?    day of    March    ....
by    David Acosta, a married man, joined by his wife, Elizabeth Acosta
who is personally known to me or who has produced    Drivers Licenses (PA)
as identification.

My Commission expires:                                                    Notary Public

_____(Seal)

NOTARIAL SEAL
LARRY E. WAHL, Notary Public
Lancaster, Lancaster County, PA
My Commission Expires Dec. 11, 2000

Form 3010 9/90 (page 7 of 7 pages)

OFFICIAL RECORDS
BOOK        PAGE

3828    0310

SEMINOLE CO.,FL

## FIXED/ADJUSTABLE RATE RIDER
(1 Year Treasury Index - Rate Caps) Loan Number 0012073

THIS FIXED/ADJUSTABLE RATE RIDER is made this 24th day of MARCH 2000 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3229 YATTIKA PLACE, LONGWOOD, FLORIDA 32779
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of 7.625 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Date
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL 1, 2005 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Change
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000                                                             percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FNMA UNIFORM INSTRUMENT                                                          Form 3182 5/94
Document Systems, Inc. (800) 649-1362                    Page 1 of 3



OFFICIAL RECORDS
BOOK            PAGE

3826    0311

SEMINOLE CO..FL

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.625 % or less than 5.625 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.625 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of the change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.  UNTIL BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises the option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2.  WHEN BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FNMA UNIFORM INSTRUMENT

Document Systems, Inc. (800) 649-1362                    Form 3182 5/94

Page 2 of 3

INITIALS 

OFFICIAL RECORDS
BOOK      PAGE

3828    0312

SEMINOLE CO., FL

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DAVID ACOSTA              -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
ELIZABETH ACOSTA          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FNMA UNIFORM INSTRUMENT                                              Form 3182 2/01

Document Systems, Inc. (800) 649-1362          Page 3 of 3

OFFICIAL RECORDS
BOOK                PAGE

3828    0313

SEMINOLE CO.,FL

## PLANNED UNIT DEVELOPMENT RIDER

Loan Number 0012073

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    24th    day of
MARCH  2000                        , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA
CORPORATION                                              (the "Lender")
of the same date and covering the Property described in the Security Instrument  and located at:

3229 YATTIKA PLACE,  LONGWOOD,  FLORIDA 32779
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

ALAQUA
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations.  Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents.  The "Constituent Documents" are the:  (i) Declaration; (ii) articles of
incorporation, trust instrument  or any equivalent document which creates the Owners Association;
and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.  Hazard Insurance.  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts, for the periods, and against the hazards
Lender requires, including fire and hazards included within the term "extended coverage," then:
(i) Lender waives the provision in the Uniform Covenant 2 for the monthly payment to Lender
of one-twelfth of the yearly premium installments for hazard insurance on the Property; and
(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on
the Property is deemed satisfied to the extent that the required coverage is provided by the Owners
Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage
provided by the master or blanket policy.

MULTISTATE PUD RIDER - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3150 9/90
Document Systems, Inc. (800) 649-1362
Page 1 of 2



BOOK RECORDS PAGE
3828    0314
SEMINOLE CO., FL

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
DAVID ACOSTA                    Borrower                                           Borrower

_____ (Seal)          _____ (Seal)
Elizabeth Acosta                Borrower                                           Borrower

_____ (Seal)          _____ (Seal)
                                Borrower                                           Borrower

MULTISTATE PUD RIDER - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3150 9/90
Document Systems, Inc. (800) 649-1362                    Page 2 of 2

MAGE01 : FL-03-36852-2  07/02/2003 04:20:13pm

**EXHIBIT DD-8**

MARYANNE MORSE
CLERK OF CIRCUIT COURT

**518674**

SEMINOLE COUNTY, FL
RECORDED & VERIFIED

2000 APR -5 PM 3: 03

OFFICIAL RECORDS
BOOK 3828

SEMINOLE CO. FL
PAGE 0315

WHEN RECORDED, MAIL TO:

MORTGAGE CAPITAL ASSOCIATES, INC.
11150 WEST OLYMPIC BOULEVARD, #1150
WEST LOS ANGELES, CALIFORNIA 90064

RETURN TO:
LANDSAFE TITLE
180 INTERNATIONAL PKWY.
#180
HEATHROW, FL 32746

Order No. 00010885
Escrow No. 00010885
Loan No. 0012073

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
CITICORP MORTGAGE, INC.

whose mailing address is

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
MARCH 24, 2000              executed by  DAVID ACOSTA,  a married
man, joined by his wife, Elizabeth Acosta

                                                                           , as mortgagor,
to  MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA
CORPORATION                                                          , as mortgagee,
and recorded either

☐ concurrently herewith; or
☐ as Instrument No. _____ on _____ in book 3828, page 0303.
in the Official Records in the County Recorder's office of SEMINOLE County.

FLORIDA                              , describing land therein as:
LOT 40, ALAQUA PHASE II, ACCORDING TO THE PLAT THEREOF AS
RECORDED IN PLAT BOOK 38, PAGE(S) 27 TO 29, OF THE PUBLIC
RECORDS OF SEMINOLE COUNTY, FLORIDA.
A.P.N.: 15-20-29-5JY-0000-0400

TOGETHER with the note or notes therein described or referred to, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

FLORIDA  Assignment of Mortgage/Corporation  or Partnership
Escrow  System, Inc (800) 640-1942                                Page 1 of 2

IMAGE01 : FL-03-36852-2  07/02/2003 04:20:13pm                                    Page 2 of 2

OFFICIAL RECORDS
BOOK    PAGE
3823    0316
SEMINOLE CO. FL

Signed, sealed and delivered in the presence of:
Witnesses:                                              MORTGAGE CAPITAL ASSOCIATES,
                                                        INC., A CALIFORNIA
STEVEN POWELL                                           CORPORATION

_____

STATE OF FLORIDA                    )
                                    ) SS.
COUNTY OF SEMINOLE                  )                   Jay M. Steven

    The foregoing instrument was acknowledged          Corporate Secretary
before me this 24th day of March
by Jay M. Steven
as Corporate Secretary
for Mortgage Capital Associates

Signature _____

(Print, Type or Stamp Commissioned Name of Notary Public)

Personally known _____ or
Produced Identification
Type of Identification Produced: _____                (Seal)

My Commission expires:                                  This instrument prepared by:

        IMELDA W. LAY
        COMM #1197386
        Notary Public-California
        LOS ANGELES COUNTY
        My Comm. Exp. Oct. 30, 2002

FLORIDA Assignment of Mortgage/Corporation or Partnership
Business Systems, Inc (800) 649-1362              Page 2 of 2

RLC AGM

# Law Offices of David J. Stern, P.A.

**David J. Stern**
Managing Attorney

**Associate Attorneys**
Miriam L. Mendieta
Samuel Hy Silverglate
Forrest G. McSurdy
Patrick J. Casey
Donna S. Glick
Neha Baumann
Fazia S. Corabie
Donna Evertz
Beverly A. McComas
Maria M. Solomon
Gregg R. Dreilinger
Mary Elizabeth Diaz
Wendy J. Wasserman
Stephen T. Cary
Gregory F. Winters
Robyn R. Katz
Alberto H. Hernandez

**801 S. University Drive Suite 500**
**Plantation, FL 33324**

Primary Phone (954)233-8000
Auto Attendant (954)233-8400
Primary/Foreclosure Fax (954)233-8333

Internet E-Mail datern@dstern.com

**Associate Attorneys**
Sydney E. Scheinman
Billi K. Pollack
Dinna M. Kawass
Alison M. Chastain
Lance E. Forman
Sergio Osorio
Wanda D. Murray
Steve M. Bimston
Marie D. Campbell
Frederic J. Di Spigna
Michelle K. Masse
Stacey D. Rosenthal
R. Charles Ervin
James Saglio
Charles J. Courshon*
Arthur J. Berk*
*Of Counsel

September 14 , 2003

David Acosta
3229 Yattika Place
Longwood, FL 32779

RE:    Citimortgage v. Acosta, et al
       Case #: 03-CA-1766-14-W
       DJS #: 03-13242

Dear Mr. Acosta:

Enclosed please find a copy of the Mortgage, the Note, the Assignment of Mortgage, and the Corporate Notice of Name Change. These documents will serve as validation of the debt. I will be sending you a complete payment history under separate cover.

Sincerely,

Gregg Dreilinger
GD:clw
03-13242.def
Enclosure as noted

**APPLICATION BY FOREIGN CORPORATION TO FILE AMENDMENT TO APPLICATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA**

## SECTION I (1-3 must be completed)

1. _____ CITICORP MORTGAGE, INC. _____
   Name of corporation as it appears within the records of the Department of State.

2. Incorporated under laws of: **Delaware** _____

3. Date authorized to do business in Florida: October 25, 1979 _____

## SECTION II (4-7 complete only the applicable changes)

4. If the amendment changes the name of the corporation, when was the change effected under the laws of its jurisdiction of incorporation?

   _____ April 3, 2000 _____

5. Name of corporation after the amendment, adding suffix "corporation," "company," "incorporated," or appropriate abbreviation, if not contained in new name of the corporation:

   CITIMORTGAGE, INC. _____

6. If the amendment changes the period of duration, indicate new period of duration.

   No Change _____

7. If the amendment changes the jurisdiction of incorporation, indicate new jurisdiction.

_____

_____ Signature Jeffery L. Boyher _____        April 3, 2000 _____
Name and Title Vice President                  Date

(FLA.- 2251 - 3/19/93)

00 APR -7 PM 3: 59
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

### State of Delaware

# Office of the Secretary of State

PAGE   1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THAT THE SAID "CITICORP MORTGAGE,
INC.", FILED A CERTIFICATE OF AMENDMENT, CHANGING ITS NAME TO
"CITIMORTGAGE, INC.", THE THIRD DAY OF APRIL, A.D. 2000, AT 10
O'CLOCK A.M.

*Edward J. Freel, Secretary of State*

0879442   8320

0011.70353

AUTHENTICATION:        0358930

DATE:        04-04-00

**EXHIBIT DD-10**

October 2, 2003

David Acosta
3229 Yattika Place
Longwood, FL 32779

Mr. Gregg Dreilinger
Law Offices of David J. Stern, P.A.
801 S. University Drive, Suite 500
Plantation, FL 33324

    Re:    Citimortgage, Inc. v. David Acosta, et al.
           Case #: 03-CA-1766-14-W
           DJS #:  03-13242

Dear Mr. Dreilinger:

I am in receipt of your letter dated September 29, 2003 wherein you state that the documents you sent "serve as validation of the debt." I disagree.

I have disputed the debt you allege I owe your client and have demanded validation and verification. Black's Law Dictionary, 7th Edition (1999) defines verification as:

> "verification, n. 1. A formal declaration made in the presence of an authorized officer, such as a notary public, by which one sears to the truth of the statements in the document. . . .".

> "it is established law that a verification is a sworn statement of the truth of the facts stated in the instrument which is verified." H.A.M.S. Company v. Electric Contractors of Alaska, Inc. (1977)  563 Pacific Reporter 258, 260.

Please verify, under oath that this claim is valid, free from any claims and defenses, including but not limited to any breach of agreement, failure of consideration, and material alteration of the original agreement. Please also verify that the alleged account was transferred in good faith and by the consent of all parties involved.

You may wish to use the enclosed affidavit to verify the validity of your client's alleged debt, in addition to other certified documentation submitted as admissible evidence supporting your claim.

Please be advised that I am aware of my rights and intend to exercise them under the law. Proceed at your own peril if you insist that copies of the documents sent to me are verification of this alleged debt. Your firm is already in violation of the Fair Debt Collection Practices Act with respect to the collection of this alleged debt. Your offer to send a complete "payment history" is welcome, but will also fall short of the verification I seek.

Please govern yourself accordingly.

Sincerely,

David Acosta

**AFFIDAVIT: VERIFICATION AND VALIDATION OF DEBT**

Pursuant to United States Code Title 15 § 1692, *et seq.,* the undersigned affiant, being duly sworn on oath deposes and states that he is authorized to collect the alleged Mortgage Account Number 90800541118 (hereinafter "alleged account") and has requisite knowledge of the facts related to the alleged CitiMortgage Inc. and/or Mortgage Capital Associates, Inc. agreement.

I hereby give assurance that the original credit or and financial institution involved with the alleged loan to the alleged consumer David Acosta (hereinafter "consumer") followed Generally Accepted Accounting Principles (GAAP) as required by law and as indicated by CitiMortgage, Inc.'s CPA audit reports.

I further give assurance that the original lender or financial institution involved with the alleged loan, or funding of the subject account used their money, money equivalent, or capital as adequate consideration to purchase the promissory note from alleged consumer.

I give further assurance that the original lender or financial institution involved with the alleged loan, or funding of the mortgage did not accept, receive or deposit any money, money equivalent, note, credit or capital from alleged consumer to fund a note, check or similar instrument that was used to finance/fund the mortgage of the alleged account.

I give further assurance that the original lender or financial institution involved with the alleged loan, or funding of the mortgage incurred financial losses in the amount of $_____, wherefore CitiMortgage was damaged and is hereby collecting a bona fide debt arising from services provided, or goods sold to the alleged consumer in the amount of $_____.

I give further assurance that all material facts, terms and disclosures involved, regarding the alleged account, have been disclosed in the alleged agreement or promissory note.

I give further assurance that CitiMortgage, Inc. is the holder in due course of all notes and that they were taken for value, in good faith and without any notice of claims and defenses.

I have personal knowledge that the original alleged agreement or promissory note was not altered or forged in any way.

I have personal knowledge regarding the information in this affidavit, WHEREFORE I hereby declare under penalty of perjury under the laws of state of_____ that this affidavit is true, correct and complete.

Signed by:

_____

Print Full Name: _____

Print Full Address: _____

STATE OF _____   )
                                          )        ss
COUNTY OF _____   )

     Subscribed and sworn to before me a notary public this ___ day of _____, _____.

_____
Signature of Notary

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by fax at 954-233-833; and by first class mail to Gregg Dreilinger, attorney for the Plaintiff, 801 S. University Drive, Suite 500, Florida 33324 on this 2nd day of October 2003.

DAVID ACOSTA
3229 Yattika Place
Longwood, Florida 32779
407-333-0623

**EXHIBIT DD-11**

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14

CITIMORTGAGE, INC.

      **PLAINTIFF**

VS.

DAVID ACOSTA, ET AL

      DEFENDANT(S)

## NOTICE OF FILING CERTIFICATE OF COMPLIANCE WITH THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C., SEC. 1601 ET SEQ.

    Plaintiff, by and through its undersigned counsel, hereby gives notice of filing the attached original Certificate of Compliance with the Fair Debt Collection Practices Act 15 U.S.C Sec. 1601 Et Seq.

    I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 14 ___ day of November, 2003 to:

DAVID ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

GREGG R. DREILINGER
Law Offices of David J. Stern, P.A.
801 S. University Drive, Suite 500
Plantation, FL 33324
(954) 233-8000
Bar #: 0025615

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14

CITIMORTGAGE, INC.

       PLAINTIFF

VS.

DAVID ACOSTA, ET AL

       DEFENDANT(S)

## CERTIFICATE OF COMPLIANCE WITH
## THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. SEC. 1601 ET SEQ.

COMES NOW, the Plaintiff, CITIMORTGAGE, INC., by and through its undersigned attorney and states that the Plaintiff has complied with the Defendant(s) request for information pursuant to the Fair Debt Collection Practices Act 15 U.S. C. Sec.1601, et seq.

I hereby certify that a true and correct copy of the foregoing was mailed this 14 day of November, 2003 to:

DAVID ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

GREGG R. DREILINGER
Law Offices of David J. Stern, P.A.
801 S. University Drive, Suite 500
Plantation, FL 33324
(954) 233-8000
Bar #: 0025615

EXHIBIT DD-17

# Law Offices of David J. Stern, P.A.

**801 S. University Drive Suite 500**
**Plantation, FL 33324**

David J. Stern
Managing Attorney

Associate Attorneys
Miriam L. Mendieta
Samuel Hy Silvergiste
Forrest G. McSurdy
Patrick J. Casey
Donna S. Glick
Neha Baumann
Fazia S. Corsbie
Donna Evertz
Beverly A. McComas
Maria M. Solomon
Gregg R. Dreilinger
Mary Elizabeth Diaz
Wendy J. Wasserman
Stephen T. Cary
Gregory F. Winters
Robyn R. Katz
Alberto H. Hernandez

Primary Phone (954)233-8000
Auto Attendant (954)233-8400
Primary/Foreclosure Fax (954)233-8333

Internet E-Mail dstern@dstern.com

Associate Attorneys
Sydney E. Scheinman
Bill K. Pollack
Diana M. Kawass
Alison M. Chastain
Lance E. Forman
Sergio Osorio
Wanda D. Murray
Steve M. Bimston
Marie D. Campbell
Frederic J. Di Spigna
Michelle K. Mason
Stacey D. Rosenthal
R. Charles Ervin
James Seglio
Charles J. Courshon*
Arthur J. Berk*
*Of Counsel

November 14, 2003

David Acosta
3229 Yattika Place
Longwood, FL 32779

RE:   Citimortgage v. Acosta, et al
      Case #: 03-CA-1766-14-W
      DJS #: 03-13242

Dear Mr. Acosta:

Enclosed please find a payment history for your above referenced loan dfating back to July 2000. I have already provided you with a copy of the Mortgage, the Note and the Assignment of Mortgage. If you also would like to receive payoff and reinstatement figures, please advise.

Sincerely,

Gregg Dreilinger
GD:ln
03-13242.df2
Enclosure as noted

/2003 12:52 FAX 638 258 5281    CITIMORTGAGE    Case 6:04-cv-00781-JA-DAB    Document 1    Filed 05/21/2004    Page 45 of 86    2002

```
DISPLAY/HISTORY                                    BAZN 10/27/03        PFMM5

ACCT 9080054118    8  DT 10/27/03  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000              BLK 042/000        ACOSTA    D 22
PDTO 01/01/03 PBAL    435653.79  EBAL      0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI       0.00
AUDIT DT 03/08/00 UNAP        0.00 CD
CON-BAL              UNC-INT            TIED IND/DESC:
DT/TLR TR    PDTO        TR-AMT      PRIN        INT         ESC      L/C OT-

101603 FE   0101      1200.00  44-REINSTMNT TO EXPENSE
101303 FE   0101         9.00  47-IEO-INSP EXP OFFSET
101303 FR   0101        -9.00  46-BIE-BATCH INSP EXP
092303 FE   0101         9.00  47-IEO-INSP EXP OFFSET
092303 FR   0101        -9.00  46-BIE-BATCH INSP EXP
091803 DEB           1443.50 400007508 DAVID J ST 194068      030918
             52-FORECLOSURE COSTS
091803 DEB            720.00 400007508 DAVID J ST 194068      030918
             39-FRCLSR ATTY FEE
091603 ITR  0101 OLD   713 42 NEW    581 42    PBAL  435653.79 EBAL
             PERCENT   100.0000


DISPLAY COMPLETE                        *NO*
```

./2003 12:52 FAX 636 256 5261     CITIMORTGAGE     ☒003
Case 6:04-cv-00761-JA-DAB     Document 1     Filed 05/21/2004     Page 46 of 86

```
DISPLAY/HISTORY                              BAZN 10/27/03           PFMM5

ACCT 9080054118   8  DT 09/16/03  BAL N   TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000           BLK 042/000          ACOSTA    D 22
PDTO 01/01/03 PBAL    435653.79  EBAL      0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD         0.00  UNCOL-LC  -2075.86 -CRI        0.00
AUDIT DT 03/08/00 UNAP        0.00 CD
CON-BAL              UNC-INT              TIED IND/DESC:
DT/TLR TR   PDTO       TR-AMT       PRIN         INT         ESC      L/C OT-A


090503 DEB            1200.00 400007508 DAVID J ST 191178   030905
            79-FRCLSR ATTY ADVANCE
090303 FE   0101         9.00  47-IEO-INSP EXP OFFSET
090303 FR   0101        -9.00  46-BIE-BATCH INSP EXP
081203 FE   0101         9.00  47-IEO-INSP EXP OFFSET
081203 FR   0101        -9.00  46-BIE-BATCH INSP EXP
072103 FE   0101         9.00  47-IEO-INSP EXP OFFSET
072103 FR   0101        -9.00  46-BIE-BATCH INSP EXP
071503 DEB              85.00 410004582 APPINTELL  2415B     030715
            43-APPRAISAL/BPO



DISPLAY COMPLETE                          *NO*
```

2003 12:53 FAX 636 256 5281        CITIMORTGAGE        Ø004

```
DISPLAY/HISTORY                              BAZN 10/27/03         PFMM5

ACCT 9080054118   8  DT 07/15/03  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000               BLK 042/000        ACOSTA    D 22
PDTO 01/01/03 PBAL     435653.79  EBAL        0.00  WARN 5  LOCK 9  STOP 00
I-YTD     11098.14  T-YTD        0.00  UNCOL-LC  -2075.86  -CRI       0.00
AUDIT DT 03/08/00 UNAP       0.00 CD
CON-BAL               UNC-INT          TIED IND/DESC:
DT/TLR TR    PDTO        TR-AMT      PRIN        INT         ESC      L/C OT-A


062503 FE   0101         9.00   47-IEO-INSP EXP OFFSET
062503 FR   0101        -9.00   46-BIE-BATCH INSP EXP
050903 FE   0101         9.00   47-IEO-INSP EXP OFFSET
050903 FR   0101        -9.00   46-BIE-BATCH INSP EXP
041703 PA   0101      3170.92      400.16     2770.76      .00      .00    .
041703 UI                                        .00             -158.54   .
040803 FE   1201         6.90   47-IEO-INSP EXP OFFSET
040803 FR   1201        -6.90   46-BIE-BATCH INSP EXP
030703 FE   1201         6.90   47-IEO-INSP EXP OFFSET
030703 FR   1201        -6.90   46-BIE-BATCH INSP EXP



DISPLAY COMPLETE                        *NO*
```

12/05/2003 16:01 FAX 0076 259 538B CITIMORTGAGE @005

Page: 1 Document Name: Amanda

DISPLAY/HISTORY                                    BAZN 10/27/03              PFMM5

ACCT 9080054118   8  DT 03/07/03  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000                BLK 042/000          ACOSTA    D 22
PDTO 01/01/03 PBAL    435653.79  EBAL      0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI        0.00
AUDIT DT 03/08/00 UNAP        0.00 CD
CON-BAL                 UNC-INT            TIED IND/DESC:
DT/TLR TR    PDTO        TR-AMT       PRIN        INT          ESC        L/C OT-A

| DT/TLR | TR  | PDTO | TR-AMT   | PRIN    | INT      | ESC | L/C     | OT-A |
|--------|-----|------|----------|---------|----------|-----|---------|------|
| 030603 | RP  | 1201 | 3170.92  | 397.63  | 2773.29  | .00 | .00     | .    |
| 030603 | UI  |      |          |         | .00      |     | -158.54 | .    |
| 030603 | RP  | 1101 | 3170.92  | 395.12  | 2775.80  | .00 | .00     | .    |
| 030603 | UI  |      |          |         | .00      |     | -158.54 | .    |
| 030603 | RP  | 1001 | 3170.92  | 392.63  | 2778.29  | .00 | .00     | .    |
| 030603 | UI  |      |          |         | .00      |     | -158.54 | .    |
| 021903 | PR1 | 0901 | -3170.92 | -392.63 | -2778.29 | .00 | .00     | .    |
| 021903 | PR1 | 1001 | -3170.92 | -395.12 | -2775.80 | .00 | .00     | .    |
| 020303 | RP  | 1101 | 3170.92  | 395.12  | 2775.80  | .00 | .00     | .    |
| 020303 | UI  |      |          |         | .00      |     | -158.54 | .    |

DISPLAY COMPLETE                        *NO*

05/21/2004 12:54 FAX 736 1254 0703    CITI MORTGAGE    Document Filed 05/21/2004    Page 49 of 86    ☒006

```
DISPLAY/HISTORY                                   BAZN 10/27/03           PF

ACCT 9080054118   8  DT 02/03/03  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BU
TYP 1  SUB 0  INV 00581/00000              BLK 042/000        ACOSTA    D 2
PDTO 01/01/03 PBAL    435653.79 EBAL        0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD       0.00  UNCOL-LC  -2075.86 -CRI       0.00
AUDIT DT 03/08/00 UNAP       0.00 CD
CON-BAL             UNC-INT          TIED IND/DESC:
DT/TLR TR   PDTO      TR-AMT       PRIN        INT        ESC       L/C OT-
```

| DT/TLR | TR | PDTO | TR-AMT | PRIN | INT | ESC | L/C | OT- |
|---|---|---|---|---|---|---|---|---|
| 020303 | RP | 1001 | 3170.92 | 392.63 | 2778.29 | .00 | .00 | . |
| 020303 | UI | | | | .00 | | -158.54 | . |
| 123102 | YTD | 0901 | .00 | .00 | 25114.31 | .00 | .00 | . |
| 103102 | SR | 0901 | .16 | .00 | .00 | .00 | .16 | . |
| 103102 | UI | | | | .00 | | .16 | . |
| 103102 | RP | 0901 | 3170.92 | 390.15 | 2780.77 | .00 | .00 | . |
| 103102 | UI | | | | .00 | | -158.54 | . |
| 103102 | RP | 0801 | 3170.92 | 387.69 | 2783.23 | .00 | .00 | . |
| 103102 | UI | | | | .00 | | -158.54 | . |
| 102402 | FE | 0701 | 6.90 | 47-IEO-INSP EXP OFFSET | | | | |

```
DISPLAY COMPLETE                        *NO*
```

07/02/2003 13:54 FAX 636 123A 5241    CITIMORTGAGE    Document Name: Filed 05/21/2004    Page 50 of 86    ☒007

```
DISPLAY/HISTORY                                BAZN 10/27/03            PFMM5

ACCT 9080054118   8  DT 10/24/02  BAL N   TYPE F (F=FINANCIAL,D=DATAMSGS,B=BO
TYP 1  SUB 0  INV 00581/00000               BLK 042/000         ACOSTA    D 22
PDTO 01/01/03 PBAL    435653.79  EBAL      0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI      0.00
AUDIT DT 03/08/00 UNAP       0.00 CD
CON-BAL            UNC-INT           TIED IND/DESC:
DT/TLR TR    PDTO     TR-AMT       PRIN        INT        ESC      L/C OT-A


102402 FR   0701       -6.90   46-BIE-BATCH INSP EXP
083002 RP   0701     3170.92      385.24    2785.68        .00      .00    .
083002 UI                                       .00              -158.54    .
080102 FE   0601        6.90   47-IEO-INSP EXP OFFSET
080102 FR   0601       -6.90   46-BIE-BATCH INSP EXP
072602 RP   0601     3170.92      382.81    2788.11        .00      .00    .
072602 UI                                       .00              -158.54    .
072602 RP   0501     3170.92      380.39    2790.53        .00      .00    .
072602 UI                                       .00              -158.54    .
053102 RP   0401     3170.92      377.99    2792.93        .00      .00    .



DISPLAY COMPLETE                        *NO*
```

CITI MORTGAGE

Document Name: Amanda

DISPLAY/HISTORY                                      BAZN 10/27/03          PFMM⬛

ACCT 9080054118   8  DT 05/31/02   BAL N   TYPE F  (F=FINANCIAL,D=DATAMSGS,B=BO⬛
TYP 1  SUB 0  INV 00581/00000               BLK 042/000        ACOSTA    D 2⬛
PDTO 01/01/03 PBAL    435653.79  EBAL       0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI      0.00
AUDIT DT 03/08/00 UNAP        0.00 CD
CON-BAL                UNC-INT              TIED IND/DESC:
DT/TLR TR    PDTO       TR-AMT       PRIN        INT        ESC        L/C  OT-A

| DT/TLR | TR | PDTO | TR-AMT | PRIN | INT | ESC | L/C | OT-A |
|--------|-----|------|---------|--------|----------|------|---------|---|
| 053102 | UI | | | | .00 | | -158.54 | . |
| 032902 | RP | 0301 | 3170.92 | 375.60 | 2795.32 | .00 | .00 | . |
| 032902 | UI | | | | .00 | | -158.54 | . |
| 020502 | RP | 0201 | 3170.92 | 373.23 | 2797.69 | .00 | .00 | . |
| 010202 | RP | 0101 | 3170.92 | 370.87 | 2800.05 | .00 | .00 | . |
| 123101 | YTD | 1201 | .00 | .00 | 33779.07 | .00 | .00 | . |
| 120401 | RP | 1201 | 3170.92 | 368.53 | 2802.39 | .00 | .00 | . |
| 110501 | RP | 1101 | 3170.92 | 366.20 | 2804.72 | .00 | .00 | . |
| 100101 | RP | 1001 | 3170.92 | 363.89 | 2807.03 | .00 | .00 | . |
| 083101 | RP | 0901 | 3170.92 | 361.59 | 2809.33 | .00 | .00 | . |

DISPLAY COMPLETE                          *NO*

Page: 1 Document Name: ...nanda

DISPLAY/HISTORY                                    BAZN 10/27/03              PFMM5

ACCT 9080054118   8   DT 08/31/01  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1   SUB 0   INV 00581/00000              BLK 042/000           ACOSTA     D 22
PDTO 01/01/03 PBAL     435653.79  EBAL       0.00  WARN 5  LOCK 9  STOP 00
I-YTD     11098.14  T-YTD         0.00  UNCOL-LC  -2075.86 -CRI        0.00
AUDIT DT 03/08/00 UNAP       0.00 CD
CON-BAL                UNC-INT              TIED IND/DESC:
DT/TLR TR     PDTO      TR-AMT      PRIN       INT        ESC      L/C OT-A

| DT/TLR | TR | PDTO | TR-AMT | PRIN | INT | ESC | L/C | OT-A |
|--------|-----|------|--------|------|-----|-----|-----|------|
| 073001 | RP | 0801 | 3170.92 | 359.31 | 2811.61 | .00 | .00 | . |
| 070201 | RP | 0701 | 3170.92 | 357.04 | 2813.88 | .00 | .00 | . |
| 060501 | RP | 0601 | 3170.92 | 354.79 | 2816.13 | .00 | .00 | . |
| 043001 | RP | 0501 | 3170.92 | 352.55 | 2818.37 | .00 | .00 | . |
| 032901 | RP | 0401 | 3170.92 | 350.32 | 2820.60 | .00 | .00 | . |
| 030201 | RP | 0301 | 3170.92 | 348.11 | 2822.81 | .00 | .00 | . |
| 020501 | RP | 0201 | 3170.92 | 345.91 | 2825.01 | .00 | .00 | . |
| 010801 | RP | 0101 | 3170.92 | 343.73 | 2827.19 | .00 | .00 | . |
| 123100 | YTD | 1201 | .00 | .00 | 19857.92 | .00 | .00 | . |
| 121100 | RP | 1201 | 3170.92 | 341.56 | 2829.36 | .00 | .00 | . |

DISPLAY COMPLETE                         *NO*

Date: 10/27/2003 Time: 12:30:22 PM

DISPLAY/HISTORY                                    BAZN 10/27/03              PFMM5

ACCT 9080054118    8  DT 12/11/00  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000          BLK 042/000          ACOSTA      D 22
PDTO 01/01/03 PBAL    435653.79  EBAL      0.00  UNCOL-LC  -2075.86 -CRI     0.00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI        0.00
AUDIT DT 03/08/00 UNAP      0.00 CD
CON-BAL                 UNC-INT          TIED IND/DESC:
DT/TLR TR    PDTO       TR-AMT      PRIN        INT          ESC       L/C OT-A

| DT/TLR TR | PDTO | TR-AMT | PRIN | INT | ESC | L/C | OT-A |
|---|---|---|---|---|---|---|---|
| 103000 RP | 1101 | 3170.92 | 339.40 | 2831.52 | .00 | .00 | . |
| 100600 RP | 1001 | 3170.92 | 337.26 | 2833.66 | .00 | .00 | . |
| 091100 RP | 0901 | 3170.92 | 335.13 | 2835.79 | .00 | .00 | . |
| 080800 SR | 0801 | 84.93 | 84.93 | .00 | .00 | .00 | . |
| 080800 RP | 0801 | 3170.92 | 332.48 | 2838.44 | .00 | .00 | . |
| 071700 PR3 | 0701 | -3170.92 | -332.48 | -2838.44 | .00 | .00 | . |
| 071700 SR3 | 0801 | -84.93 | -84.93 | .00 | .00 | .00 | . |
| 071000 SR | 0801 | .00 | 158.54 | .00 | .00 | -158.54 | . |
| 071000 UI | | | | .00 | | -158.54 | . |
| 071000 SR | 0801 | .00 | 158.54 | .00 | .00 | -158.54 | . |

DISPLAY COMPLETE                        *NO*

```
DISPLAY/HISTORY                              BAZN 10/27/03        PFMM5

ACCT 9080054118    8  DT 07/10/00  BAL N  TYPE F (F=FINANCIAL,D=DATAMSGS,B=BOT
TYP 1  SUB 0  INV 00581/00000              BLK 042/000        ACOSTA    D 22
PDTO 01/01/03 PBAL    435653.79  EBAL        0.00  WARN 5  LOCK 9  STOP 00
I-YTD    11098.14  T-YTD        0.00  UNCOL-LC  -2075.86 -CRI        0.00
AUDIT DT 03/08/00 UNAP        0.00 CD
CON-BAL            UNC-INT            TIED IND/DESC:
DT/TLR TR    PDTO      TR-AMT      PRIN        INT        ESC      L/C OT-A

071000 UI                                     .00              -158.54    .
070700 SR    0801      84.93      84.93        .00        .00      .00    .
070700 RP    0801    3170.92     330.47     2840.45       .00      .00    .
070600 SR    0701     158.54        .00        .00        .00    158.54   .
070600 UI                                     .00               158.54    .
070600 RP    0701    3170.92     328.39     2842.53       .00      .00    .
070600 RP    0601    3170.92     326.31     2844.61       .00      .00    .
070600 UI                                     .00              -158.54    .



END OF HISTORY                     *NO*
```

EXHIBIT DD-13

IN THE CIR
CIRCUIT, IN
FLORIDA

CASE NO: 03-CA-1766-14-W

CITIMORTGAGE, INC.,

    PLAINTIFF

VS.

DAVID ACOSTA, ET AL.,

    DEFENDANT(S)

## MOTION TO STRIKE AFFIRMATIVE DEFENSES

COMES NOW, Plaintiff, CITIMORTGAGE, INC., by and through its undersigned counsel, hereby files this Motion to Strike Affirmative Defenses and in support thereof states as follows:

1.    Defendant has filed a series of un-numbered Affirmative Defenses.

2.    All of the Affirmative Defenses are based on an allegation that the Plaintiff does not loan money as applied in the Complaint, and did not lend money to this Defendant.

3.    This allegation is not a legally recognized Affirmative Defense. In addition, Defendant does not bring these Affirmative Defenses in good faith as he has made payments on the loan amount.

4.    In addition, the Defendant raises other allegations in the Affirmative Defenses, however, he does not plead the allegations with any specificity so that a response to the Affirmative Defenses can be filed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed via U.S. mail this 14 day of November, 2003 to:

DAVID ACOSTA
3229 Yattika Place
Longwood, FL 32779

GREGG R. DREILINGER
Law Offices of David J. Stern
*Counsel for Plaintiff*
801 S. University Drive, Suite 500
Plantation, Florida 33324
(954) 233-8000
Florida Bar No.: 0025615

03-13242.mts

**EXHIBIT DD-14**

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14

CITIMORTGAGE, INC.
       PLAINTIFF

VS.

DAVID ACOSTA, ET AL
    DEFENDANT(S)

## MOTION TO STRIKE DEMAND AND/OR REQUEST FOR JURY TRIAL

Plaintiff, CITIMORTGAGE, INC, by and through its undersigned counsel, moves this
Honorable Court for the entry of an Order Striking the Defendants' Demand and/or Request for
Jury Trial and in support thereof states as following:

1.      The instant action is in the nature of a mortgage foreclosure action.

2.      Pursuant to Florida Statute §702.01, the foreclosure claim shall be tried to the
Court without a jury.

WHEREFORE, Plaintiff respectfully request this Court enter an Order striking the
Defendants' Demand and/or Request for Jury Trial.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this
14 day of November , 2003 to the following:

DAVID ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

GREGG R. DREILINGER
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
801 S. University Drive, Ste 500
Plantation, FL 33324
(954) 233-8000
Florida Bar #: 0025615

03-13242.MST

IN THE CIRCUIT COURT
JUDICIAL CIRCUIT, IN
SEMINOLE COUNTY, FLC

**EXHIBIT DD-15**

GENERAL JURISDICTION
CASE NO:  03-CA-11766-14-W

CITIMORTGAGE, INC.,

      PLAINTIFF

VS.

DAVID ACOSTA, ET AL.,

      DEFENDANT(S)

### NOTICE OF TELEPHONIC HEARING
### PLAINTIFF'S COUNSEL WILL APPEAR BY PHONE
### (Special Set 15 minutes)

    **YOU ARE HEREBY NOTIFIED** that we will call up for hearing in the Chambers of the **Honorable Clayton Simmons** at the **SEMINOLE County Courthouse, 301 N. Park Avenue, Room M, Sanford, FL 32771 on Friday, December 19, 2003 at 9:30 a.m. via telephone** or as soon thereafter as may be heard.

### PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

    Pursuant to administrative order, a bona fide effort has been made by counsel to agree on a stipulated order, or failing that, to narrow the issues.

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, persons with disabilities needing a special accommodation should contact COURT ADMINISTRATION, at the SEMINOLE County Courthouse at 407-665-4227, 1-800-955-8771 (TDD) or 1-800-955-8770, via Florida Relay Service.

### <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Telephonic Hearing was sent  by mail this _25_ day of _November_ , 200_3_  to the following:

DAVID ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

          _Gregg Darlinger_
          GREGG R. DREILINGER, ESQ.
          Law Offices of David J. Stern, P.A.
          Attorney for Plaintiff
          801 S. University Drive, Ste 500
          Plantation, FL 33324
          (954) 233-8000

03-13242.NOH          Florida Bar #: 0025615

IN THE CIRCUIT COURT OF THE 18TH
JUDICIAL CIRCUIT, IN AND FOR
SEMINOLE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-11766-14-W

CITIMORTGAGE, INC.,

      PLAINTIFF

VS.

DAVID ACOSTA, ET AL.,

      DEFENDANT(S)

## NOTICE OF TELEPHONIC HEARING
## PLAINTIFF'S COUNSEL WILL APPEAR BY PHONE

**YOU ARE HEREBY NOTIFIED** that we will call up for hearing in the Chambers of the **Honorable Clayton Simmons** at the **SEMINOLE County Courthouse, 301 N. Park Avenue, Room N-217, Sanford, FL 32771 on Friday, December 19, 2003 at 10:30 a.m. via telephone** or as soon thereafter as may be heard.

### PLAINTIFF'S MOTION TO STRIKE DEMAND AND/OR REQUEST FOR JURY TRIAL

Pursuant to administrative order, a bona fide effort has been made by counsel to agree on a stipulated order, or failing that, to narrow the issues.

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, persons with disabilities needing a special accommodation should contact COURT ADMINISTRATION, at the SEMINOLE County Courthouse at 407-665-4227, 1-800-955-8771 (TDD) or 1-800-955-8770, via Florida Relay Service.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Telephonic Hearing was sent by mail this _15_ day of _November_ , 200_3_ to the following:

DAVID ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

GREGG R. DREILINGER, ESQ.
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
801 S. University Drive, Ste 500
Plantation, FL 33324
(954) 233-8000
Florida Bar #: 0025615

03-13242.NOH

UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

**EXHIBIT DD-16**

Division of Credit Practices
Bureau of Consumer Protection

March 10, 1993

Jeffrey S. Wollman
Vice President and Controller
Retrieval Masters Creditors Bureau, Inc.
1261 Broadway
New York, New York 10001

Dear Mr. Wollman:

This is in response to your letter of February 9, 1993 to David Medine regarding the type of verification required by Section 809(b) of the Fair Debt Collection Practices Act. You ask whether a collection agency for a medical provider will fulfill the requirements of that Section if it produces "an itemized statement of services rendered to a patient on its own computer from information provided by the medical institution . . ." in response to a request for verification of the debt. You also ask who is responsible for mailing the verification to the consumer.

The statute requires that the debt collector obtain verification of the debt and mail it to the consumer (emphasis mine). Because one of the principal purposes of this Section is to help consumers who have been misidentified by the debt collector or who dispute the amount of the debt, it is important that the verification of the identity of the consumer and the amount of the debt be obtained directly from the creditor. Mere itemization of what the debt collector already has does not accomplish this purpose. As stated above, the statute requires the debt collector, not the creditor, to mail the verification to the consumer.

Your interest in writing is appreciated. Please be aware that since this is only the opinion of Commission staff, the Commission itself is not bound by it.

Sincerely,

John F. LeFevre
Attorney
Division of Credit Practices

*Exhibit 60.1.2.86 17*

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14-W

CITIMORTGAGE, INC.

**PLAINTIFF**

VS.                                                        CIVIL ACTION SUMMONS

DAVID ACOSTA, ET AL.

**DEFENDANT(S)**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint /amended complaint or petition and Notice required by the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692(g), for verification of debt in this action on defendant(s):

ELIZABETH ACOSTA
3229 YATTIKA PLACE
LONGWOOD, FL 32779

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book)

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a carbon copy or photocopy of your written response to the "plaintiff's attorney" listed below:

LAW OFFICES OF DAVID J. STERN, P.A.
801 S. UNIVERSITY DRIVE SUITE 500
PLANTATION, FL 33324
TELEPHONE: (954) 233-8000

MARYANNE MORSE, CLERK

CLERK OF THE CIRCUIT COURT

DATED: JUL 16 2003          BY: _Patricia F Miller_

03-13242 (CMI)                          DEPUTY CLERK OF COURT

SHEILA M. HUFF
SPECIAL PROCESS SERVER
P.O. BOX 948074
MAITLAND, FL 32794-8074
(407) 834-9200
TIME: 7:20AM  DATE: 7/24/03
C. P. S. # 2002-926. HoF

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias contados a partir del recibo de esta notificacion para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero de caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades. o privado de sus derechos, sin previo aviso del tribuanl. Existen otros requisitos legales. Si lo desea puede used consultar a un abogado inmediatemente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal debera usted enviar por correo o entregar una copia de su respuesta a la persona demoninada abajo como "Plaintiff/ Plantiff Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete enreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pur vous proteger. Vous etes oblige de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vouse souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent., et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juriduques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaiassez pas d'avocate. vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones)

This notice is provided pursuant to Administrative Order No.2.031-9/96

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, persons with disabilities needing a special accommodation should contact COURT ADMINISTRATION, at the SEMINOLE County Courthouse at 407-665-4227, 1-800-955-8771 (TDD) or 1-800-955-8770, via Florida Relay Service.

## SPANISH

De acuerdo con el Acta de los Americanos con Impedimentos, aquellas personas que necesiten de algún servicio especial para participar en este proceso o tener acceso a servicios, programas ó actividades de La Corte deberán, dentro de un periódo rasonable antes de cualquier proceso o de tener necesidad de acceso a servicios, programas ó actividades, ponerse en contacto con La Oficina Administrativa de Ia Corte, que esti situada en el SEMINOLE, ó a los telefonos 407-665-4227, ó 1-800-955-8771 (TDD) y Si usa el servicio Florida Relay Service al 1-800-955-8770 (V).

## CREOLE

D'apre' akô ki té fet avek Akt Pou Amerikin ki Infim, tout moun ki genyen yon bézwen éspesyal pou akomodasyon pou yo patisipé nan pwosè obyen pou gin aks. Sèvis, pwogram ak aktivité tibinal-la, dwé nan yon tan rézonab anvan okin pwosè oubyen bezwen aksè sevis, pwogram oubyen aktivitè fet, yo dwé konta Ofis Tribinal-la ki nan SEMINOLE, niméro téléfonn-nan sé 407-665-4227, ou byen 1-800-955-8771 (TDD) ou byen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

## FRENCH

En accordance avec l'Acte Pour les Americains Incapacites', les personnes en besoin d'une accommodation spéciale pour participer á ces procédures, ou bien pour avoir accès au service, progamme, ou activité de la Court doivent, dans un temps raisonable, avant aucune procedures ou besoin d'accès de service, programme ou activité, contacter l'Office Administrative de Ia Court, situé au numéro SEMINOLE, le numéro de téléphone 407-665-4227, ou 1-800-955-8771 (TDD), ou 1-800-955-8770 (V) ou par Florida Relay Service.

This space is for recording purposes only

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14-W

CITIMORTGAGE, INC.
     PLAINTIFF
VS.

DAVID ACOSTA, IF LIVING, AND IF DEAD,
THE UNKNOWN SPOUSE, HEIRS,
DEVISEES, GRANTEES, ASSIGNEES,
LIENORS, CREDITORS, TRUSTEES AND
ALL OTHER PARTIES CLAIMING AN
INTEREST BY, THROUGH, UNDER OR
AGAINST DAVID ACOSTA; ELIZABETH
ACOSTA; ALAQUA PROPERTY OWNERS
ASSOCIATION, INC.; COLONIAL PACIFIC
LEASING CORPORATION; HOUSEHOLD
BANK (SB), NATIONAL ASSOCIATION;
PROVIDIAN NATIONAL BANK;
SOVEREIGN BANK; RESIDENTIAL
FUNDING CORPORATION, IN ITS
INDIVIDUAL CAPACITY AND AS
TRUSTEE; MORTGAGE CAPITAL
ASSOCIATES, INC.; JOHN DOE AND JANE
DOE AS UNKNOWN TENANTS IN
POSSESSION
     DEFENDANT(S)

NOTICE OF LIS PENDENS

1. TO: The above named Defendants, AND ALL OTHERS WHOM IT MAY CONCERN:

2. YOU ARE NOTIFIED of the institution of this action by the Plaintiff against you seeking to foreclose the Note and Mortgage encumbering the described property and the decreeing of a sale of the property under the direction of the court in default of the payment of the amount found to be due the Plaintiff under the Note and Mortgage, and for other, further and general relief set forth in the Complaint.

3. The property involved is that certain parcel, lot or unit situate, lying and being in SEMINOLE County, Florida, as set forth in the mortgage recorded in Official Records Book 3828, at Page 303, more particularly described as follows:

LOT 40, ALAQUA PHASE II, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 38, PAGE (S) 27 TO 29, OF THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.

Dated at Plantation, Broward County, Florida, this 11th day of July, 2003.

MARIE D. CAMPBELL
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
801 S. University Drive Suite 500
Plantation, FL 33324
(954) 233-8000
Bar #: 0543357

03-13242 (CMI)

IN THE CIRCUIT COURT    THE 18TH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 03-CA-1766-14-6

CITIMORTGAGE, INC.

      **PLAINTIFF**

VS.

DAVID ACOSTA, IF LIVING, AND IF DEAD,
THE UNKNOWN SPOUSE, HEIRS,
DEVISEES, GRANTEES, ASSIGNEES,
LIENORS, CREDITORS, TRUSTEES AND
ALL OTHER PARTIES CLAIMING AN
INTEREST BY, THROUGH, UNDER OR
AGAINST DAVID ACOSTA; ELIZABETH
ACOSTA; ALAQUA PROPERTY OWNERS
ASSOCIATION, INC.; COLONIAL PACIFIC
LEASING CORPORATION; HOUSEHOLD
BANK (SB), NATIONAL ASSOCIATION;
PROVIDIAN NATIONAL BANK;
SOVEREIGN BANK; RESIDENTIAL
FUNDING CORPORATION, IN ITS
INDIVIDUAL CAPACITY AND AS
TRUSTEE; MORTGAGE CAPITAL
ASSOCIATES, INC.; JOHN DOE AND JANE
DOE AS UNKNOWN TENANTS IN
POSSESSION

      **DEFENDANT(S)**

## COMPLAINT TO FORECLOSE MORTGAGE AND EQUITABLE SUBORDINATION

Plaintiff, sues the Defendant(s) and alleges:

### COUNT I

1.     THIS IS AN ACTION to foreclose a Mortgage on real property in SEMINOLE County, Florida.

2.     This Court has jurisdiction over the subject matter herein.

3.     On MARCH 24, 2000 DAVID ACOSTA executed and delivered a Promissory Note and DAVID ACOSTA, JOINED BY HIS WIFE, ELIZABETH ACOSTA executed and delivered a PURCHASE MONEY Mortgage securing payment of the Note to the Payee named thereon.

4.     The Mortgage was recorded on APRIL 5, 2000 in Official Records Book 3828 at page 303, of the Public Records of SEMINOLE County, Florida, and mortgaged the property described in it, then owned by and possessed by the Mortgagors, a copy of the Mortgage AND NOTE ARE attached hereto as "Exhibit "A". Said mortgage was subsequently assigned to CITICORP MORTGAGE, INC. by virtue of an assignment recorded on APRIL 5, 2000 at Official Records Book 3828, Page 315 of the SEMINOLE County Records, a copy of which is attached hereto as Exhibit "B".

5.     The Plaintiff owns and holds the Note and Mortgage.

6.     The property is now owned by the Defendant(s), DAVID ACOSTA if living and if dead, the unknown spouses, heirs and beneficiaries of DAVID ACOSTA who hold(s) possession.

7.     There is a default under the terms of the note and mortgage for the FEBRUARY 1, 2003 payment and all payments due thereafter.

8.   All conditions precedent the acceleration of this Mortgage Note and to eclosure of the Mortgage have been fulfilled or have occurred.

9.   The Plaintiff declares the full amount payable under the Note and Mortgage to be due.

10.   The borrowers have the right to dispute the validity of this debt pursuant to the Fair Debt Collection Practices Act.  Notification of this right is attached to this Complaint as "Notice required by the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692g, As Amended."

11.   The borrowers owe the Plaintiff as of the date of the filing of this complaint the following amounts: unpaid principal balance: $435,653.79; interest through July 11, 2003: $17,381.00; late charges (pre-acceleration): $2,868.56; title search: $175; title exam: $150; filing fee: $130.50; and attorneys fees of $600 for a total of $456,958.85.  In addition, interest will continue to accrue and other charges and advances may be incurred by the mortgagee, including but not limited to attorneys fees and costs, for which the borrowers will be responsible.  **The Defendants must contact this firm at (954) 233-8000 to obtain updated payoff figures.**  Please refer to the Fair Debt Collection Notice attached to this complaint for important information regarding your rights under the Fair Debt Collection Practices Act.

12.   Plaintiff is obligated to pay its attorney a reasonable fee for his services rendered.

13.   Defendants, John Doe and Jane Doe, may claim an interest in the property described in the Mortgage as tenants pursuant to a lease agreement, either written or oral.  Said interest is subject, subordinate, and inferior to the lien of the Mortgage held by Plaintiff.

14.   In addition to all other named defendants, the unknown spouses, heirs, devisees, grantees, assignees, creditors, trustees, successors in interest or other parties claiming an interest in the subject property by, through under or against any of said defendants, whether natural or corporate, who are not known to be alive or dead, dissolved or existing, are joined as defendants herein.  The claims of any of said parties are subject, subordinate, and inferior to the interest of Plaintiff.

15.   The Defendant, ELIZABETH ACOSTA is joined because SHE may claim some interest in or lien upon the subject property by virtue of a possible homestead interest.  Said interest is subject, subordinate and inferior to the interest of the Plaintiff's mortgage.

16.   The Defendant(s) ALAQUA PROPERTY OWNERS ASSOCIATION, INC. IS joined because IT may claim some interest in or lien upon the subject property by virtue of a CLAIM OF LIEN recorded in Official Records Book 4627 at Page 1599 in SEMINOLE COUNTY which is inferior to Plaintiff's Mortgage described herein.

17.   The Defendant(s) COLONIAL PACIFIC LEASING CORPORATION IS joined because IT may claim some interest in or lien upon the subject property by virtue of a JUDGMENT recorded in Official Records Book 4833 at Page 863 in SEMINOLE COUNTY which is inferior to Plaintiff's Mortgage described herein.

18.   The Defendant(s) HOUSEHOLD BANK (SB), NATIONAL ASSOCIATION IS joined because IT may claim some interest in or lien upon the subject property by virtue of a JUDGMENT recorded in Official Records Book 4814 at Page 584 in SEMINOLE COUNTY which is inferior to Plaintiff's Mortgage described herein.

19.   The Defendant(s) SOVEREIGN BANK IS joined because IT may claim some interest in or lien upon the subject property by virtue of a JUDGMENT recorded in Official Records Book 4434 at Page 569 in SEMINOLE COUNTY which is inferior to Plaintiff's Mortgage described herein.

20.   The Defendant(s) PRO     IAN NATIONAL BANK IS joined because     nay claim some interest in or lien upon the subject property by virtue of a JUDGMENT recorded in Official Records Book 4684 at Page 1665 in SEMINOLE COUNTY which is inferior to Plaintiff's Mortgage described herein.

21.   The Defendant(s) RESIDENTIAL FUNDING CORPORATION, IN ITS INDIVIDUAL CAPACITY AND AS TRUSTEE IS joined because IT may claim some interest in or lien upon the subject property by virtue of the following:

| Type of Lien | Recording Date | Official Records Book | Page |
|---|---|---|---|
| ASSIGNMENT OF MORTGAGE | FEBRUARY 26, 2003 | 4723 | 1781 |
| NOTICE OF LIS PENDENS | MARCH 3, 2003 | 4729 | 947 |
| AMENDED NOTICE OF LIS PENDENS | APRIL 23, 2003 | 4789 | 1632 |

recorded in SEMINOLE County which are inferior to Plaintiff's Mortgage described herein.

22.   The Defendant(s) MORTGAGE CAPITAL ASSOCIATES, INC. IS joined because IT may claim some interest in or lien upon the subject property by virtue of the following:

| Type of Lien | Recording Date | Official Records Book | Page |
|---|---|---|---|
| SECONDS MORTGAGE | APRIL 5, 2000 | 3828 | 291 |
| MORTGAGE | MARCH 28, 2003 | 4760 | 1800 |

recorded in SEMINOLE County which are inferior to Plaintiff's Mortgage described herein.

WHEREFORE, Plaintiff prays: That an accounting may be had and taken under the direction of this Court of what is due the Plaintiff for principal and interest on said Mortgage and Mortgage Note, and for the costs, charges and expenses, including attorney's fees and title search costs, and advancements which Plaintiff may be put to or incur in and about this suit, and that the Defendants found responsible for same be ordered to pay the Plaintiff herein the amounts so found to be due it; that in default of such payments, all right, title, interest, claim, demand, or equity of redemption of the Defendants and all other persons claiming by, through, under or against said Defendants since the filing of the Lis Pendens herein be absolutely barred and foreclosed and that said mortgage property be sold under the direction of this Court; that out of the proceeds of said sale, the amounts due the Plaintiff may be paid so far as same will suffice; and that a deficiency judgment be entered if applicable and only in the event no Order of Discharge of Personal Liability in Bankruptcy has been entered as to any of the Defendants who signed the subject Note and Mortgage and a Writ of Possession be issued.

### COUNT II
### EQUITABLE SUBORDINATION COUNT

22.   This is an action to equitably subordinate a mortgage on real property in SEMINOLE County, Florida.

23.   On March 24, 2000, the Defendants, DAVID ACOSTA, JOINED BY HIS WIFE, ELIZABETH ACOSTA executed a mortgage in the amount of $460,000.00.

24.   Said mortgage was recorded on APRIL 5, 2000 in Official Records Book 3828, at Page 303 of the Public Records of Seminole County, Florida.

25.   The aforementioned mc   ge was intended to be a first mortgage with p   ity over all other mortgages.

26.   On MARCH 24, 2000, the Defendants contemporaneously executed a second mortgage in the amount of $57,500.00 on the same date as the aforementioned mortgage. This mortgage was recorded on APRIL 5, 2000 in Official Records Book 3828, at Page 291. It is clear that this mortgage was intended to be junior and inferior to Plaintiff's mortgage, but was inadvertently recorded prior to Plaintiff's mortgage. See attached "Exhibit B".

27.   There was merely an error in the order of the recording of the documents.

28.   All interested parties have been named as Defendants herein.


Wherefore, Plaintiff prays that this Court deems the Defendant's mortgage junior and subordinate to Plaintiff's mortgage that is recorded in Official Records Book 3828, at page 303. This would give Defendant's mortgage the intended status of a second mortgage, notwithstanding the order of the recording of the pertinent documents, and Plaintiff's mortgage the intended status of a first mortgage with priority over all Defendants' interests.


**TO ALL DEFENDANTS: PLEASE READ THE NEXT PAGE WHICH CONTAINS IMPORTANT INFORMATION IF YOU WANT TO DISPUTE THE VALIDITY OF THE DEBT WHICH PLAINTIFF IS ATTEMPTING TO COLLECT IN THIS LAWSUIT.**

MARIE D. CAMPBELL
Law Offices of David J. Stern, P.A.
Attorney for Plaintiff
801 S. University Drive Suite 500
Plantation, FL 33324
(954) 233-8000
Bar #: 0543357

03-13242 (CMI)

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C SECTION 1692g, AS AMENDED

1. The amount of the debt is set forth in the complaint which is attached to this notice.

2. The plaintiff as set forth in the attached summons and complaint is the creditor to whom the debt is owed.

3. The debtor may dispute the validity of this debt, or any portion thereof, within 30 days of receipt of this notice. If the debtor fails to dispute the debt within 30 days, the debt will be assumed valid by the creditor.

4. If the debtor notifies the creditor's law firm in writing within 30 days from receipt of this notice that the debt, or any portion thereof is disputed, the creditor's law firm will obtain verification of the debt or a copy of a judgment and a copy of the verification will be mailed to the debtor by the creditor's law firm.

5. If the creditor named in herein is not the original creditor, and if the debtor makes a written request to the creditor's law firm within 30 days of receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6. Written requests pursuant of this notice should be addressed to FAIR DEBT COLLECTION CLERK, Law Offices of David J. Stern.

7. This communication is for the purpose of collecting a debt, and any information obtained from the debtor will be used for that purpose.

The law does not require the debt collector to wait until the end of the thirty-day period to initiate this action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period which begins with your receipt of this notification, the law requires the debt collector to suspend efforts (through litigation or otherwise) to collect the debt until the debt collector mails the requested information to you.

RETURN TO:
LANDSAFE TITLE
160 INTERNATIONAL PKWY.
#160
HEATHROW, FL 32746

MARYANNE MORSE
CLERK OF CIRCUIT COURT
510673

SEMINOLE COUNTY, FL
RECORDED & VERIFIED
2000 APR 5  PM 3: 03

WHEN RECORDED MAIL TO:

MORTGAGE CAPITAL ASSOCIATES, INC.
11150 WEST OLYMPIC BOULEVARD, #1160
WEST LOS ANGELES, CALIFORNIA 90064

950.00    1610.00

Loan Number 0012073

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **MARCH 24, 2000**
The mortgagor is **DAVID ACOSTA, A MARRIED MAN, joined by his wife, Elizabeth Acosta**

("Borrower"). This Security Instrument is given to
**MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION**
which is organized and existing under the laws of **CALIFORNIA**                    , and whose address is
**11150 WEST OLYMPIC BOULEVARD, #160, WEST LOS ANGELES, CALIFORNIA
90064**
("Lender"). Borrower owes Lender the principal sum of
**FOUR HUNDRED SIXTY THOUSAND AND 00/100**********
Dollars (U.S. $ **460,000.00**      ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable
on **APRIL 1, 2030**                             . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;
(b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
**SEMINOLE**                                                         County, Florida:
**LOT 40, ALAQUA PHASE II, ACCORDING TO THE PLAT THEREOF AS RECORDED IN
PLAT BOOK 38, PAGE(S) 27 TO 29, OF THE PUBLIC RECORDS OF SEMINOLE
COUNTY, FLORIDA.
A.P.N.: 15-20-29-5JY-0000-0400**

which has the address of **3229 YATTIKA PLACE              LONGWOOD**
                                        [Street]                                    [City]

**Florida        32779**              ("Property Address");
                        [Zip Code]

**FLORIDA** – Single Family – Fannie Mae/Freddie Mac UNIFORM  INSTRUMENT          Form 3010 9/90 (page 1 of 7 pages)

FL3 MTG

Exhibit A

OFFICIAL RECORDS
BOOK                  PAGE
3828      0304
SEMINOLE CO.,FL

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law. Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

Form 3010 9/90 (page 2 of 7 pages)



FL2 MTG

BOOK            PAGE
3828     0305
SEMINOLE CO.,FL

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner. Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or

**Form 3010 9/90** *(page 3 of 7 pages)*



FL3 MTG

OFFICIAL RECORDS
BOOK          PAGE

3820      0305

SEMINOLE CO.,FL

statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **7.**   **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

    Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

    **8.**   **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

    **9.**   **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10.**   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

    In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the

Form 3010 9/90 (page 4 of 7 pages)



OFFICIAL RECORDS
BOOK        PAGE
3828     0307
SEMINOLE CO.,FL

sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this

Form 3010 9/90 (page 5 of 7 pages)



FL2 MTG

OFFICIAL RECORDS
BOOK      PAGE

3828    0303

SEMINOLE CO.,FL

Security Instrument; or (b) entry of a judgment enforcing this Security Instrument  These conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.  Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19.  Sale of Note; Change of Loan Servicer.  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

20.  Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

21.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23.  Attorneys' Fees.  As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys'

Form 3010 9/90 (page 6 of 7 pages)



FL2 MTG

OFFICIAL RECORDS
BOOK        PAGE
3828      0309
SEMINOLE CO.,FL

forwarded by an appellate court.

24.  Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [X] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ Witness       _____ Witness

_____ (Seal)         _____ (Seal)
DAVID ACOSTA            - Borrower                              - Borrower

_____ (Seal)         _____ (Seal)
Elizabeth Acosta        - Borrower                              - Borrower

_____ (Seal)         _____ (Seal)
                        - Borrower                              - Borrower

This Instrument was prepared by: MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION

STATE OF ' PA
COUNTY OF Lancaster

The foregoing instrument was acknowledged before me this  27  day of  March  ...
by  David Acosta, a married man, joined by his wife, Elizabeth Acosta
who is personally known to me or who has produced  Drivers Licenses (PA)
as identification.

                                                            Notary Public

My Commission expires:                (Seal)

NOTARIAL SEAL
LARRY E. WARFEL, Notary Public
Lancaster, Lancaster County, PA
My Commission Expires Dec. 11, 2000

                                        Form 3010 9/90 (page 7 of 7 pages)

OFFICIAL RECORDS
BOOK      PAGE
3826     0310
SEMINOLE CO.,FL

## FIXED/ADJUSTABLE  RATE  RIDER
### (1 Year Treasury Index - Rate Caps) Loan Number 0012073

THIS FIXED/ADJUSTABLE  RATE RIDER is made this  24th day of MARCH
2000  , and is incorporated  into and shall be deemed to amend and supplement  the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument  and
located at:

3229 YATTIKA PLACE, LONGWOOD, FLORIDA 32779
[Property Address]

THE NOTE PROVIDES FOR A CHANGE  IN THE BORROWER'S FIXED INTEREST RATE
TO AN  ADJUSTABLE  INTEREST  RATE.   THE NOTE LIMITS THE AMOUNT THE
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE THE BORROWER  MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of  7.625 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest  rate I will pay will change to an adjustable interest  rate on the first day
of APRIL 1, 2005                              , and the adjustable interest rate I will
pay may change on that day every 12th month thereafter. The date on which my initial fixed interest
rate changes to an adjustable interest  rate, and each date on which my adjustable interest  rate could
change, is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity
of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available
as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information.  The Note Holder will give me notice of this choice.

(C) Calculation of Change
Before each Change Date, the Note Holder will calculate my new interest  rate by adding
TWO AND 750/1000                                        percentage points
(   2.750 %) to the Current Index. The Note Holder will then round the result of this
addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in
Section 4(D) below, this rounded  amount will be my new interest  rate until the next Change Date.

MULTISTATE FIXED/ADJUSTABLE  RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FHMA UNIFORM INSTRUMENT                                          Form 3182 5/94
Document  Systems, Inc  (800) 649-1362              Page 1 of 3



OFFICIAL RECORDS
BOOK                PAGE

3826    0311

SEMINOLE CO..FL

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.625 %** or less than **5.625 %**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( **2.000 %**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.625 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of the change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.   UNTIL BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises the option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.   WHEN BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FNMA UNIFORM INSTRUMENT                                          Form 3182 5/94
Document Systems, Inc. (800) 649-1362              Page 2 of 3


INITIALS

3182 RDR

OFFICIAL RECORDS
BOOK          PAGE
**3828    0312**

SEMINOLE CO.,FL

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DAVID ACOSTA              -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
Elizabeth Acosta          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-1 YEAR TREASURY INDEX-Single Family-
FNMA UNIFORM INSTRUMENT                                              Form 3182 5/94
Document Systems, Inc. (800) 649-1362              Page 3 of 3

OFFICIAL RECORDS
BOOK          PAGE

3828    0313

SEMINOLE CO., FL

# PLANNED UNIT DEVELOPMENT RIDER

Loan Number 0012073

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     24th        day of
MARCH  2000                      , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA
CORPORATION                                      (the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

### 3229 YATTIKA PLACE, LONGWOOD, FLORIDA 32779
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

### ALAQUA
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

   PUD COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

   A. PUD Obligations.  Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents.  The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association;
and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

   B. Hazard Insurance.  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender
and which provides insurance coverage in the amounts, for the periods, and against the hazards
Lender requires, including fire and hazards included within the term "extended coverage," then:
   (i) Lender waives the provision in the Uniform Covenant 2 for the monthly payment to Lender
of one-twelfth of the yearly premium installments for hazard insurance on the Property; and
   (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on
the Property is deemed satisfied to the extent that the required coverage is provided by the Owners
Association policy.
   Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage
provided by the master or blanket policy.

MULTISTATE PUD RIDER - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT        Form 3150 9/90
Document Systems, Inc (800) 649-1362                          Page 1 of 2



BOOK        RECORDS
            PAGE
3828        0314
SEMINOLE CO.,FL

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:
(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;
(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;
(iii) termination of professional management and assumption of self-management of the Owners Association; or
(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
DAVID ACOSTA          Borrower                              Borrower

_____ (Seal)          _____ (Seal)
Elizabeth Acosta      Borrower                              Borrower

_____ (Seal)          _____ (Seal)
                      Borrower                              Borrower

MULTISTATE PUD RIDER - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3150 9/90
Document Systems, Inc. (800) 649-1362                    Page 2 of 2

## FIXED/ADJUSTABLE RATE NOTE
(1 Year Treasury Index - Rate Caps) **Loan No. 0012073**

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

**MARCH 24, 2000**          **WEST LOS ANGELES**    **CALIFORNIA**
[Date]                      [City]               [State]

**3229 YATTIKA PLACE, LONGWOOD, FLORIDA 32779**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **460,000.00**      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of      **7.625** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   **MAY   2000** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **APRIL   1        , 2030**      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **11150 WEST OLYMPIC BOULEVARD, #1160, WEST LOS ANGELES, CALIFORNIA 90064**
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **3,255.85** . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay may change to an adjustable interest rate on the first day of **APRIL        , 2005**      , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 750/1000** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, the rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.625** % or less than **5.625** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.625** %. **2.750**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of the change in my initial fixed interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 17 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    (Seal)          _____    (Seal)
DAVID ACOSTA                   Borrower                                        Borrower

_____    (Seal)          _____    (Seal)
                               Borrower                                        Borrower

_____    (Seal)          _____    (Seal)
                               Borrower                                        Borrower

[SIGN ORIGINAL ONLY]

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

IMAGE01 : FL-03-36852-2  07/02/2003 04:26:13pm                                      Page 1 of 2

MARYANNE MORSE
CLERK OF CIRCUIT COURT
518674

SEMINOLE COUNTY, FL
RECORDED & VERIFIED
2000 APR - 5  PM 3: 03

OFFICIAL RECORDS
BOOK    3828
PAGE    0315
SEMINOLE CO. FL

WHEN RECORDED, MAIL TO:

MORTGAGE CAPITAL ASSOCIATES, INC.
11150 WEST OLYMPIC BOULEVARD, #1160
WEST LOS ANGELES, CALIFORNIA 90064

RETURN TO:
LANDSAFE TITLE
160 INTERNATIONAL PKWY.
#180
HEATHROW, FL 32746

Order No. 00010885
Escrow No. 00010885
Loan No. 0012073

——————————— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———

### Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
CITICORP MORTGAGE, INC.

whose mailing address is

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
MARCH 24, 2000          executed by  DAVID ACOSTA, a married
man, joined by his wife, Elizabeth Acosta

to MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA          , as mortgagor,
CORPORATION          , as mortgagee,
and recorded either
☐ concurrently herewith; or
☐ as Instrument No.          on          in book 3828, page 0303.
in the Official Records in the County Recorder's office of  SEMINOLE          County,

FLORIDA          , describing land therein as:
LOT 40, ALAQUA PHASE II, ACCORDING TO THE PLAT THEREOF AS
RECORDED IN PLAT BOOK 38, PAGE(S) 27 TO 29, OF THE PUBLIC
RECORDS OF SEMINOLE COUNTY, FLORIDA.
A.P.N.: 15-20-29-5JY-0000-0400

TOGETHER  with the note or notes therein described or referred to, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

FLORIDA  Assignment of Mortgage/Corporation  or Partnership
Donnour Systems, Inc (800) 649-1362          Page 1 of 2

FLC AGM

Exhibit B

OFFICIAL RECORDS
BOOK   PAGE
3823   0316
SEMINOLE CO.,FL.

Signed, sealed and delivered in the presence of:
Witnesses:

STEVEN POWELL

MORTGAGE CAPITAL ASSOCIATES,
INC., A CALIFORNIA
CORPORATION

STATE OF FLORIDA          )
                          ) SS.
COUNTY OF SEMINOLE        )

The foregoing instrument was acknowledged
before me this 24th day of March
by Jay M. Steven
as Corporate Secretary
for Mortgage Capital Assoc.

Signature Imelda W. Lay

Jay M Steven

Corporate Secretary

(Print, Type or Stamp Commissioned Name of Notary Public)

Personally known _____ or
Produced Identification _____
Type of Identification Produced: _____

My Commission expires:

IMELDA W. LAY
COMM #1197595
Notary Public-California
LOS ANGELES COUNTY
My Comm. Expires Sep 30, 2002

(Seal)

This instrument prepared by:

FLORIDA  Assignment of Mortgage/Corporation or Partnership
Document Systems, Inc. (800) 649-1362                        Page 2 of 2

RLC AGM