**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DAVID ACOSTA,

                    **Plaintiff,**

-vs-                                                    Case No.  6:04-cv-761-Orl-28DAB

MARIE D. CAMPBELL,  GREGG
DREILINGER,  LAW OFFICES OF
DAVID J. STERN, P.A., CITIMORTGAGE,
INC., CITIBANK, FSB, IMELDA W. LAY,
MORTGAGE CAPITAL ASSOCIATES,
INC., RESIDENTIAL FUNDING
CORPORATION, JAY M. STEREN, JOHN
DOES 1-20,

                    **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

          This cause came on for consideration with oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MARIE D. CAMPBELL, GREGG DREILINGER, AND THE LAW OFFICES OF DAVID J. STERN, P.A., MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc. No. 104)** |
| **FILED:** | **August 22, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

| | |
|---|---|
| **MOTION:** | **CITIMORTGAGE, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc. No. 105)** |
| **FILED:** | **August 22, 2005** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. | |
| **MOTION:** | **CITIBANK, FEDERAL SAVINGS BANK'S MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc. No. 116)** |
| **FILED:** | **October 3, 2005** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. | |

CitiMortgage, Inc. began foreclosure proceedings on July 16, 2003 against David Acosta in state court for failure to pay the mortgage on his residence.  Acosta subsequently filed suit in this Court on May 21, 2004, against the law firm foreclosing on the mortgage, alleging violations of the federal Fair Debt Collection Practices Act[1], 15 U.S.C. § 1692.  Doc. No. 1.

Approximately one year later, Acosta amended his Complaint to allege additional claims[2] against the mortgage holder, CitiMortgage, Inc., for violations of the federal Racketeer Influenced And Corrupt Organizations Act and its Florida counterpart, as well as state law claims.  CitiMortgage, Inc., Citibank, FSB, and the Law Offices of David J. Stern with two of its attorneys now move to dismiss the claims against them set forth in Acosta's operative complaint.  Doc. No. 104, 105, 116. Because the Court finds that the majority of Acosta's allegations fail to state a claim upon which relief

---

[1]On November 30, 2004, Acosta filed an Amended Complaint (Doc. No. 37) against Defendants Marie D. Campbell, Gregg Dreilinger, Law Offices of David J. Stern, P.A.

[2]Acosta also alleges claims against several others allegedly involved in obtaining the mortgage:  Mortgage Capital Associates, Inc., Residential Funding Corporation, Jay M. Steren, Imelda W. Lay, and "John Does 1-20."

can be granted, it is **RECOMMENDED** that the Motions to Dismiss be **GRANTED** in part as set forth herein.

## I. FACTUAL BACKGROUND[3]

In January 2000, Acosta, while residing in Pennsylvania, sought to purchase a home in Florida and relocate[4] to the state. Doc. No. 103 ¶ 16.  On March 24, 2000, Acosta executed a Promissory Note and a purchase money mortgage with Mortgage Capital Associates on the real property at 3229 Yattika Place, Longwood, Florida 32779 for $460,000 (the "First Mortgage"). *Id*. Ex. DD-6 & 7.  At the same time, Acosta and his wife also executed a second mortgage[5] for $57,500 in favor of Mortgage Capital Associates (the "Second Mortgage").  *Id*. Ex. DD-33.  On March 24, 2000, MCA assigned the First Mortgage to Citibank Mortgage, Inc.  *Id*. Ex. DD-8; ¶ 32.  The First Mortgage Promissory Note was then conveyed by Mortgage Capital Associates to Citicorp Mortgage, Inc. (CitiMortgage's predecessor), who conveyed it to Citibank, FSB.  *Id*. Ex. DD-8.  On September 7, 2004, to correct defects in the pleadings in the foreclosure action, CitiMortgage, Inc. (f/k/a Citicorp Mortgage, Inc.) assigned the First Mortgage to Citibank, FSB.  *Id.* Ex. DD-21 att.

At some point following execution of the First Mortgage on March 24, 2000, Imelda Lay of Mortgage Capital Associates sent an undated letter to Acosta stating:

> I have just been informed by the investor of your first trust deed that they required a Florida specific note.  It was the opinion of our legal and document department that we do not require a state specific note if it is an adjustable.  We were wrong.  So here I am cleaning something else up.

---

[3]For purposes of the Motion to Dismiss, the facts alleged in Plaintiff's Third Amended Complaint are accepted as true. *Brown v. Crawford County, Georgia*, 960 F.2d 1002, 1010 (11th Cir. 1992) ("[f]or a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief").

[4]Acosta resided in Pennsylvania until October 2000.  *Id*. ¶ 24.

[5]Citibank, FSB served an amended complaint in the state court foreclosure on September 8, 2004, alleging that Acosta's second mortgage – executed the same day as the purchase money First Mortgage – had inadvertently been recorded ahead of Citibank's Mortgage.  *Id*. Ex. DD-21.

> I would really appreciate it, if you would be kind [sic] to sign this document and to forward it immediately to the investor.

*Id.* Ex. DD-37.  Following that correspondence, on April 18, 2000, Ms. Lay wrote to Acosta again to say "how [Mortgage Capital Associates] will handle the original note that is outstanding on the multistate fixed/adjustable rate note." *Id.* Ex. DD-36.  "Citicorp Mortgage will return to us the note previously signed by you immediately upon their receipt of the new note." *Id.*

Acosta contends that in February 2003, he began to "suspect something was wrong"[6] with his mortgage loan transaction and therefore stopped making payments to CitiMortgage. *Id.* ¶ 80.  In July 2003, Citibank sued Acosta for defaulting on the First Mortgage as of February 1, 2003, with an unpaid balance of $461,728.  *Id.* Ex. DD-21.  Citibank retained the Law Office to initiate the foreclosure action against Acosta.  *Id.* ¶ 81.  On July 14, 2003, Acosta sent a Notice of Dispute and Debt Validation Request seeking verification of the alleged debt to the Law Office; the Notice arrived at the Law Office on July 16, 2003.  *Id.* ¶ 82, 102; DD-2, DD-4.  That same day, on July 16, 2003, CitiMortgage filed suit against Acosta in the case styled *CitiMortgage, Inc. v. David Acosta et al.*, 03-CA-1766-14-10, in the Circuit Court of the 18th Judicial Circuit, in and for Seminole County, Florida. *Id.* Ex. DD-17.  Ten months after CitiMortgage's initiation of foreclosure proceedings against Acosta in state court, Acosta filed suit in this Court on May 21, 2004.  Doc. No. 1.  Plaintiff initially alleged violations of the federal Fair Debt Collection Practices Act against the Law Office and eventually sued other parties involved in the original mortgage transaction, alleging RICO and state claims.  Doc. Nos. 1, 103.

---

[6]Acosta does not elaborate on what triggered his suspicions, what it was that he believed was wrong, or how his suspicions justified discontinuance of payments due under the mortgage.

Although this suit is completely separate from the foreclosure suit against Acosta, according to Defendants' counsel, Acosta has managed to stall the foreclosure for more than two years by referring to this case in the state court. Acosta's FDCPA claim against the Law Office for failing to report the debt as disputed or failing to provide adequate verification (if that is even necessary) are the only remaining claims in this court and have no bearing whatsoever on the foreclosure suit, which should proceed without reference to this litigation.

## II. PROCEDURAL BACKGROUND

Acosta filed suit in this Court on May 21, 2004, against the law firm and lawyers collecting on the mortgage, Defendants Marie D. Campbell, Gregg Dreilinger, and the Law Offices of David J. Stern, P.A. (collectively the "Law Office"), alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Doc. No. 1. The Law Office filed a Motion to Dismiss on June 10, 2004 (Doc. No. 8), which was denied without prejudice. Doc. No. 17. The Law Office filed an Amended Motion to Dismiss on August 24, 2004. Doc. No. 21. Acosta moved to amend his Complaint (Doc. No. 24, 31), which was granted on November 16, 2004. Acosta filed his First Amended Complaint (Doc. No. 37) against the Law Office on November 30, 2004. The Law Office moved to dismiss Acosta's First Amended Complaint. Doc. No. 35. Acosta was granted further leave to amend, and on May 19, 2005, Acosta added claims against CitiMortgage in the Second Amended Complaint, and the Defendants moved to dismiss. Doc. Nos. 65, 71. Acosta moved for leave to file his fourth set of allegations on June 20, 2005 – more than one year after suit was filed and two years after the foreclosure began. Doc. No. 73. At a court-ordered status conference on August 3, 2005, the Court allowed Acosta one final opportunity to amend his complaint. Doc. No. 100.

Acosta's Third Amended Complaint alleges claims against the Law Office and the First Mortgage holders, CitiMortgage, Inc., and Citibank, FSB, for violations of the federal Racketeer

Influenced And Corrupt Organizations Act, 18 U.S.C. §§ 1961, and its Florida counterpart, Fla. Stat. § 772.101, as well as the Florida Consumer Collection Practices Act, Fla. Stat. § 559, and the Florida Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202. Doc. No. 103. Acosta also alleges claims against several others involved in obtaining or assigning the mortgage who have only recently been served, *i.e.*, Mortgage Capital Associates, Inc., Residential Funding Corporation, Jay M. Steren, Imelda W. Lay. Doc. No. 103. The Law Office, CitiMortgage, and Citibank move to dismiss the Third Amended Complaint. Doc. Nos. 94, 95, 116.

### III. LEGAL ANALYSIS

#### A.  Motion to Dismiss Standard

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). The Court is also limited to examining the four corners of the complaint. *Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D. Fla. 1995).

Acosta is proceeding *pro se*; as such, he contends that he should be held to a more relaxed standard in evaluating the allegations in his pleadings. A complaint submitted by a *pro se* plaintiff should be held to a less stringent standard than that submitted by an attorney, and should be construed as alleging all fairly and reasonably inferred claims. *See, e.g. Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (pro se plaintiff should not be held "to strict accountability of compliance with the rules of procedure"). However, even a *pro se* litigant must allege the essential elements of the claims for relief, and vague and conclusory allegations are

insufficient to state a claim. *Richards v. Harder,* 864 F.2d 85, 87 (9th Cir. 1988); *Hales v. City of Montgomery*, 347 F. Supp.2d 1167, 1171 (M.D. Ala. 2004); *Harsman v. Hood*, No. 5:04cv480-Oc-10GRJ, 2005 WL 1228794, *3 (M.D. Fla. May 24, 2005) (*pro se* plaintiffs are expected to at least abide by the minimal pleading standards set forth by F.R. Civ. P. 8(a)). Courts have consistently refused to supply essential elements of a claim for a *pro se* plaintiff if these facts are not initially pleaded in the complaint. *See, e.g., Harris v. Evans,* 20 F.3d 1118 (11th Cir. 1994) (refusing to supply allegations necessary to establish standing for *pro se* plaintiff); *Soffer v. City of Costa Mesa,* 798 F.2d 361, 363) (9th Cir. 1986) (dismissing because *pro se* plaintiff did not allege constitutional defects in 42 U.S.C. § 1983 suit and court would not supply essential allegations).

CitiMortgage, Citibank, and the Law Office seek to dismiss Acosta's Third Amended Complaint. The Law Office contends that Acosta fails to set forth an adequate factual basis for his claims and merely asserts conclusory allegations without sufficient support, including those supporting jurisdiction of this Court. The Law Office also contends that certain RICO counts were filed beyond the applicable statute of limitations. CitiMortgage and Citibank contend that all of Acosta's claims are subject to dismissal for failure to state a claim. Acosta contends that his claims withstand the motion to dismiss or in the alternative, he should be given another opportunity to amend his operative Complaint (and assert what would be his fifth version) to cure any deficiencies.

Because the allegations against Citibank are identical in all but one respect to Acosta's claims against CitiMortgage, Citibank adopted and joined in the reasoning and legal authorities in CitiMortgage's Motion to Dismiss. *See* Doc. No. 116. Beyond the agency or co-conspiracy theories that Citibank exercises control over CitiMortgage and is therefore vicariously liable, the only allegation specifically against Citibank is that Citibank's involvement was necessary to turn the value of the Promissory Note from "written form into a unit of money by depositing or otherwise crediting

a bank account with the full value of the note." This argument will be addressed individually; in all other respects, Acosta relies on the arguments made in his prior Response to CitiMortgage, Inc. (*see* Doc. No. 128) and Citibank and CitiMortgage's arguments will be addressed collectively as "CitiMortgage's" arguments.

## IV. RICO CLAIMS

CitiMortgage and the Law Office seek dismissal of Acosta's RICO claims[7] against them arguing that Acosta fails to allege facts with the requisite specificity required for RICO and fraud claims. They argue Acosta fails to allege sufficient facts of an "enterprise," a "pattern" of racketeering activity, or the identity of the persons who made misrepresentations in order to satisfy the RICO statutes. Acosta responds with citation to various paragraphs in his Third Amended Complaint, but with no significant analysis. *See* Doc. Nos. 110 at 4-5; 111 at 4-5. He also contends, without citation to any authority, that the delayed discovery rule should apply to his claims. *See* Doc. No. 111 at 3. In order to establish a federal civil RICO violation under § 1962(c), a plaintiff "must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Williams v. Mohawk Ind., Inc.*, 411 F.3d 1252, 1256 (11th Cir. 2005) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)). These requirements apply whether the RICO claim is civil or criminal in nature. *Williams*, 411 F.3d at 1256. In addition, civil RICO claimants must also show (1) the requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation. *See id.* (citing 18 U.S.C. § 1964(c)).

---

[7]The Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772 *et seq.,* sometimes referred to as the "Florida RICO" statute, was patterned after the Federal RICO Act and Florida courts often look to Federal RICO decisions for guidance in interpreting and applying the Act. *Florida Software Systems, Inc. v. Columbia HCA Healthcare Corp.*, 46 F.Supp.2d 1276 (M.D. Fla. 1999). The analysis applied to claims under the Federal RICO Act is equally applicable to claims under Florida's RICO statute. *Jackson v. BellSouth Communications*, 372 F.3d 1250 (11th Cir. 2004).

CitiMortgage contends Acosta has not pled specific facts indicating agreement on the part of CitiMortgage to violate state law or otherwise engage in a "conspiracy" to violate RICO.  The Law Office contends that Acosta fails to allege sufficient facts to establish that the Law Office was associated with an enterprise that affected interstate or foreign commerce, or that it participated in conduct of the enterprise's affairs, or that the participation was through a pattern of racketeering activity.

Plaintiff responds that he has alleged with sufficient particularity how the Law Office and CitiMortgage have collected "unlawful debts" through the mail, telephone and state court judicial proceedings.  Acosta contends that the facts set forth in his Third Amended Complaint establish with the requisite particularity the entities forming an enterprise (¶¶ 5-15); the conspiracy among the entities (¶¶ 26-28); and "in furtherance of the scheme": (a) MCA and CitiMortgage's use of specific documents  to make the transaction appear as though a Florida transaction when it was in fact an "unlawful Pennsylvania transaction" (¶¶ 31-32), and CitiMortgage's direction to MCA of which documents to use; (b) MCA's representation that the documents were executed in Seminole County; and (c) the usurious charging of interest on the First Mortgage because of the way Citibank chose to fund the money lent to Acosta to purchase the Property (¶ 60-61).

### *Enterprise*

To satisfy the first two elements of the four-part test under § 1962(c), Acosta must allege "conduct of an enterprise" and that the enterprise had a common goal.  *Williams v. Mohawk Industries, Inc.*, 411 F.3d 1252, 1257 (11th 2005) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.")).  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Eleventh Circuit outlines in *Williams*:

> [T]he existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation.

*Williams*, 411 F.3d at 1257-58 (citing *United States v. Goldin Indus., Inc.,* 219 F.3d 1271, 1275 (11th Cir. 2000)). The Law Office and CitiMortgage must have participated in "the operation or management of the enterprise itself." *Williams*, 411 F.3d at 1257 (citing *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)).

Without elaboration, Acosta points to Paragraphs 5-15 of his Third Amended Complaint as sufficient to support his "enterprise" allegations. However, the pertinent paragraphs he cites are merely jurisdictional allegations and do not describe an enterprise at all for the Law Office or Defendants Campbell and Dreilinger. For the Law Office, Acosta alleges nothing more than the Law Office is a Florida company engaged in the business of collecting debts and Defendants Campbell and Dreilinger are employed as debt collectors. Doc. No. 103 ¶ 5-6. Acosta alleges in a conclusory fashion that Dreilinger, Campbell, the Law Office and CitiMortgage have "engaged in a pattern of racketeering in violation of federal and state laws . . . as part of an enterprise working to collect an unlawful debt." Doc. No. 103 ¶ 20. Such allegations clearly fail to allege the Law Office's, Campbell's or Dreilinger's involvement in any enterprise whatsoever.

As to CitiMortgage, Acosta alleges simply that, because it is a corporation, it qualifies as "an enterprise as defined under 18 U.S.C. § 1961(4)." Doc. No. 103 ¶ 8. Case law is quite clear that the RICO defendant must be distinct from the alleged enterprise. "The court has consistently insisted that

the RICO defendant or person be separate and distinct from the enterprise . . . because liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Stachon v. United Consumer Club, Inc.,* 229 F.3d 673, 676 n.3 (7th Cir. 2000) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)). In this case, Acosta alleges no more than that MCA found an investor, CitiMortgage/Citibank, who lent him the money to purchase his residence in Florida; that MCA assigned his mortgage to CitiMortgage/Citibank; and MCA required Acosta to sign a substitute Florida-compliant promissory note to replace the original multi-state note that MCA had initially required. These are precisely the sort of activities that MCA and CitiMortgage/Citibank regularly engage in for the purpose of originating, settling, and investing in mortgages; they are not enterprise activities separate and apart from their regular business activities. *See Rivera v. AT & T Corp.*, 141 F.Supp.2d 719, 725-26 (S.D. Tex. 2001) (where Plaintiffs alleged that three national corporations each constituted an enterprise within the meaning of 18 U.S.C. § 1961(4), such general allegation failed the strict pleading requirements under RICO because no facts suggested the companies existed as an entity apart from their business of providing cable services), *aff'd*, 34 Fed. Appx. 962 (5th Cir. 2002).

The usurious loan claim against Citibank (and other Defendants as co-conspirators) is that Citibank's involvement was necessary to turn the value of the Promissory Note from "written form into a unit of money by depositing or otherwise crediting a bank account with the full value of the note" because only banks are authorized to treat the promissory note as a deposit against which they can lend out funds. Doc. No. 103 ¶ 55-66. This "banking mechanism" is a basic principle of macroeconomics, the multiplier effect, which allows financial institutions to hold only a fractional reserve of the total amount of deposits and lend out the remaining portion. *See generally* Ivan Johnson and William Roberts, MONEY AND BANKING: A MARKET ORIENTED APPROACH at 257-313

(2nd ed. 1985). Again, taking a deposit (even as a promissory note), assuming the risk of non-payment by the maker of the note, and lending money against the note as a deposit are all activities that Citibank regularly engages in; thus, they cannot support an distinct "enterprise" as required under RICO. *See Rivera*, 141 F.Supp.2d at 725-26.

Even if the Court were to construe Acosta's claims to allege that CitiMortgage, the Law Office, and MCA together constitute a RICO enterprise, it will not save the RICO claims from dismissal. Acosta must demonstrate an "association in fact" which requires "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583 (1981); *Atkinson v. Anadarko Bank & Trust, Co.,* 808 F.2d 438, 440-41 (5th Cir. 1987). Acosta would also need to "plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989). Acosta's allegations are to the contrary – that the associations between CitiMortgage/Citibank and MCA exist merely for the purpose of funding mortgages and the association between CitiMortgage/Citibank and the Law Office existed for the purpose of foreclosing the mortgage. Acosta's RICO claims would fail on this basis alone.

*Racketeering activity*

Acosta alleges three "crimes" committed by MCA and, as a conspirator, by CitMortgage/Citibank, as racketeering activities in support of his RICO claims. First, Acosta alleges that MCA operated as an unlicensed lender transacting a mortgage in Pennsylvania, a third degree felony, with CitiMortgage "conspiring" and "aiding" MCA in transacting the mortgage loan. *Id*. ¶ 25-26, Ex. DD-32. Second, Acosta contends that MCA made usurious loans by inducing Acosta to execute two promissory notes for the same debt. Doc. No. 103 ¶¶ 38-40, Ex. DD-33 & 34. Third, Acosta alleges that MCA falsely represented the Assignment of Mortgage was executed in Seminole

County and this representation created a defective jurat, a crime in Florida. *Id*. at ¶ 32-33, Ex. DD-8. Acosta's alleged "predicate offenses" fail to meet the requirements of the RICO statute, and fail to state a claim under any set of facts.

"Racketeering activity" is defined in 18 U.S.C. § 1961(1)(A) in terms of a list of state and federal crimes: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A)[8]. The individual acts of racketeering activity are usually described as the "predicate acts." "A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts.'" *Williams v. Mohawk Industries, Inc*., 411 F.3d 1252, 1256-57 (11th Cir. 2005); *Maiz v. Virani,* 253 F.3d 641, 671 (11th Cir. 2001); *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1397 (11th Cir.), *modified on other grounds by* 30 F.3d 1347 (11th Cir. 1994). The state law felony offenses listed in § 1961(1)(A) are included by generic designation, and the test for determining whether particular acts fit into the generic category of predicate offenses is whether the complaint alleges the type of activity generally known or characterized in the proscribed category. *See United States v. Forsythe,* 560 F.2d 1127, 1137 (3d Cir. 1977) (citing *United States v. Nardello,* 393 U.S. 286, 295 (1969)).

Any act that does not fall within the purview of RICO's definition of predicate offenses is not an act of "racketeering activity." *Bonton v. Archer Chrysler Plymouth, Inc.,* 889 F.Supp. 995, 1001-02 (S.D. Tex. 1995); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 793 F.Supp. 1114, 1136 (E.D. N.Y. 1992). RICO forbids "racketeering," and not state offenses per se; the state offenses referred to are definitional only, and racketeering, the federal crime, is defined by

---

[8]The other provisions of § 1961(1) setting forth "racketeering activity" cite federal criminal statutes and are clearly inapplicable to the facts of this case. *See* 18 U.S.C. § 1961(1)(B)-(G).

reference to state law crimes.  *United States v. Frumento*, 563 F.2d 1083 (3rd Cir. 1977).  Performing transactions as an unlicensed mortgage lender, providing a defective jurat, or usury, are not listed in 18 U.S.C. § 1961(1)(A) and therefore do not constitute a RICO predicate act.  Therefore, Acosta's claims fail to support a RICO claim on that basis alone.

However, under the right set of facts, usury may qualify under 18 U.S.C. § 1961(6) as collection of an "unlawful" debt.  Title 18 United States Code, section 1961(6) defines an "unlawful debt" as one "which is unenforceable under State of Federal law in whole or in part as to principle or interest because of the laws relating to usury, and "which was incurred in connection with . . . the business of lending money or thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate."  18 U.S.C. § 1961(6); *see Rivera v. AT & T Corp.*, 141 F.Supp.2d 719, 725 (S.D. Tex. 2001) (where "administrative fees" alleged by RICO plaintiff did not qualify as interest or violate the Texas usury statute, they could not claim that defendants committed the predicate illegal act sufficient to sustain a RICO claim),  *aff'd*, 34 Fed. Appx. 962 (5th Cir. 2002); *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 440 (5th Cir. 2004) (broker's fee for services could not be attributed to interest to assess usury claim to support RICO claim).

Acosta's claims regarding the usurious loan transaction are without merit. Doc. No. 103 ¶ 41-53.  Acosta alleges that CitiMortgage/Citibank and MCA conspired to obtain two promissory notes from him allegedly to induce him to pay "multiple times."  He alleges that he "may have an obligation under the previously signed promissory note to some unknown entity who could make a claim against [him] at any time."  Doc. No. 103 ¶ 50.  However, when asked by the Court at oral argument if any entity has sought to enforce the previously-signed promissory note against him, Acosta admitted that it had not happened.  Acosta also alleges that the "promissory note subject of this dispute has been satisfied in full with the source of value of the original promissory note that was . . . never returned

to" him.  *Id.*  ¶ 52.  That argument is frivolous.  The second promissory note was a substitute for the original promissory note -- the only way to satisfy the debt owed under the substitute note is through payments from Acosta.

Even if Acosta could state a RICO claim for usury as a potential "predicate act," it would be a single qualifying "predicate act" and therefore would fail to meet the requirement that there be at least two predicate acts to support a RICO claim.  To plead a pattern of racketeering activity sufficient to withstand dismissal, a plaintiff must charge that: (1) the defendants committed *two or more* predicate acts within a ten year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature.  *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239-43 (1989) (emphasis added); *Ubuy Holdings, Inc. v. Gladstone*, 340 F.Supp.2d 1343, 1348-49 (S.D. Fla. 2004) (quoting *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004).  Acosta alleges no more than that he "believes that [defendants] . . . continue to pose threats to continued criminal activity . . . and other customers, in Pennsylvania, or elsewhere, have been subjected to the same unlawful conduct."  Doc. 103, ¶ 75.  While a plaintiff may establish the third element of "continuing nature" by showing that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, *see Ubuy Holdings* at 1349, Acosta's unsupported and vague allegations are insufficient.

Even if performing transactions as an unlicensed lender in Pennsylvania were a predicate act, the allegations underlying the RICO claims would not state a claim upon which relief can be granted.  The undisputed language of the First Mortgage states that Florida law will govern.  "This Security Instrument shall be governed by federal law and *the law of the jurisdiction in which the Property is located,*" *i.e.*, Florida.  Doc. No. 103-4, Ex. DD-7 ¶ 15 (emphasis added).  Florida law is clear that, in an interstate commercial loan transaction with which several states have contacts, Florida courts

enforce the choice of law provision provided by the parties so long as the jurisdiction chosen in the contract has a rational relationship with the transaction. *Continental Mortg. Investors v. Sailboat Key, Inc.,* 395 So.2d 507, 508 (Fla. 1981) (recognizing Massachusetts choice of law provision in contract on Florida property); *Atlas Subsidiaries of Fla., Inc. v. O. & O. Inc.*, 166 So.2d 458, 461 (Fla. 1st DCA 1964) (Florida law applied where choice of law provision in promissory note specifically selected Florida law); *Your Const. Center, Inc. v. Dominion Mort. & Realty Trust*, 402 F. Supp. 757, 760 (S.D. Fla. 1975) (New York choice of law provision in mortgage documents would apply).   In Florida, a choice of law provision in a contract is presumed valid until it is proved invalid; the party who seeks to prove such a provision invalid bears the burden of proof.   *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.,* 761 So.2d 306, 311 (Fla. 2000) (citing *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982)).   Acosta has not argued that the choice of law provision in the Mortgage should be invalid for any reason; therefore, it applies and Florida law governs this case.   Having found that Florida law governs the First Mortgage, Acosta's allegations that MCA operated as an unlicensed lender transacting mortgages in Pennsylvania (Doc. No. 103 ¶ 25) and that CitiMortgage or Citibank conspired in such transactions (*id*. ¶ 26), are without merit and cannot support his RICO claims.

The allegations that MCA, through Imelda May, "falsely represented" that the Assignment of Mortgage document was executed in Seminole County, also do not support a RICO claim.   *Id.* at ¶ 32-33.   The Assignment of Mortgage form at issue has "STATE OF FLORIDA, COUNTY OF SEMINOLE" typed in below witness Steven Powell's name.   However, the notarization[9] is actually of Jay Steren's signature as Corporate Secretary for MCA, which took place in California, not Florida.

---

[9]The notarization states: "The foregoing instrument was acknowledged before me this 24th day of March by Jay M. Steren as Corporate Secretary for Mortgage Capital Assoc. Signature - Imelda May."  Doc. No. 103, Ex. DD-8.

Below Imelda May's signature, is her notary stamp which very clearly states her commission number and "Notary Public-California, Los Angeles, County." Doc. No. 103, Ex. DD-8. Mr. Steren signed the document in California, and his signature was notarized in California. On the face of the document there is no false jurat. Obviously, Ms. Lay intended to act as a notary under the authority of the state of California, as her stamp clearly indicated. *Id*. The fact that the Assignment of Mortgage transferred real property located in Seminole County and took effect in Seminole County does not have any impact on Ms. Lay's notarization of Mr. Steren's signature. Acosta's allegations regarding Ms. Lay's jurat are without merit and cannot support his RICO claims.

### Conspiracy

To allege a conspiracy claim under RICO, a plaintiff must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision International, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). A RICO conspiracy plaintiff must allege injury from an act that is analogous to an "ac[t] of a tortious character," meaning an act that is independently wrongful under RICO. *Beck v. Prupis,* 529 U.S. 494, 505-06 (2000) (citing 4 RESTATEMENT (SECOND) OF TORTS § 876, Comment b) (affirming *Beck v. Prupis,* 162 F.3d 1090, 1098 (11th Cir. 1998)); *Lockheed Martin Corp. v. Boeing Co.,* 314 F. Supp.2d 1198, 1217 n.13 (M.D. Fla. 2004). Because the Court has determined that Acosta fails to state a claim for any wrongful act under RICO by *any* of the alleged co-conspirators, Acosta's conspiracy claim must also fail.

### RICO injury

Acosta also has failed to set forth a valid RICO claim because he has not alleged the injury required to sustain a cause of action under RICO. Plaintiffs seeking the civil remedy of treble

damages must satisfy the requirements of 18 U.S.C. § 1964(c), which requires (1) the requisite injury

to "business or property" by violation of § 1962 and (2) that such injury was "by reason of" the

substantive RICO violation.  *See  Williams*, 411 F.3d at 1256.  Title 18 U.S.C. § 1962(a) states:

> It shall be unlawful for any person who has received any income derived, directly or
> indirectly, . . . through the collection of an unlawful debt in which such person has
> participated as a principal within the meaning of section 2, title 18, United States
> Code, to use or invest, directly or indirectly, any part of such income, or the proceeds
> of such income, in acquisition of any interest in, or the establishment or operation of,
> any enterprise which is engaged in, or the activities of which affect, interstate or
> foreign commerce.

Courts have interpreted this statute to require that "the compensable injury stem from the

violation of the RICO section in question, so any injury under § 1962(a) must flow from the use or

investment of racketeering income."  *Parker & Parsley Petroleum Company v. Dresser Industries,*

972 F.2d 580, 584 (5th Cir.1992); *see also Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d

926, 929-30 (5th Cir. 2002) (damages must arise from the use or investment of money received as a

result of such activities in a racketeering enterprise).  Acosta alleges injury from his payment of an

unlawful debt to Defendants, not from Defendants' investment of any unlawful debt income; thus,

Acosta has failed to plead a cognizable claim under section § 1962(a).  *See, e.g., Rivera v. AT & T*

*Corp.,* 141 F.Supp.2d 719, 726-27 (S.D. Tex. 2001) (RICO plaintiffs failed to state RICO claim where

they alleged injury from their payments of "unlawful debt" rather than defendants' investment of the

unlawful debt income), *aff'd*, 34 Fed. Appx. 962 (5th Cir. 2002).

### *Statute of Limitations*

In addition to the deficiencies in Acosta's RICO claims already discussed,

CitiMortgage/Citibank and the Law Office move to dismiss because none of Acosta's claims were

brought within the applicable statute of limitations.  The applicable statute of limitations in RICO

cases is four years.  *See Agency Holding Corp. v. Malley-Duff and Associates, Inc.*, 483 U.S. 143

(1987).  Knowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running for statute of limitations purposes.  *Rotella v. Wood*, 528 U.S. 549, 555-56 (2000); *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1249 (11th Cir. 2001) (rejecting equitable tolling claim on facts alleged by RICO plaintiff in light of *Rotella*).

Acosta alleges RICO claims arising out of events occurring in March and April 2000.  Acosta first alleged RICO claims against CitiMortgage and the Law Office in his Third Amended Complaint filed on August 3, 2005; thus, his RICO claims are clearly barred by the four-year statute of limitations. Acosta argues that he is entitled to an exception from the statute of limitations because the "delayed discovery" rule should apply to his claims in that they "arose out of discovery of very recent evidence" and he has "acted with diligence to bring forth his claims."  Doc. No. 111 at 3. Assuming *arguendo* that a "delayed discovery rule" of some sort could apply in a RICO action, it would not apply to the facts alleged by Acosta because he knew of his "injuries" – the alleged false jurat, usury, and unlicensed mortgage lending – in 2000 when he signed the documents at issue.  The Assignment of Mortgage was executed in 2000 and he knew at that time that CitiMortgage had taken over his First Mortgage.  He also knew in 2000 that he was required to provide the substitute First Mortgage, per the letter from Imelda Lay.  The fact that Acosta did not realize the allegedly RICO aspects of the documents does not provide a basis for assertion of a "delayed discovery" defense five years later.  *See Rotella v. Wood*, 528 U.S. 549, 555-56 (2000) (accrual of patient's RICO action was not delayed until he discovered alleged pattern of racketeering activity, but triggered at time of injury); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 16-17 (D.D.Cir. 2000) ("fraudulent concealment" delayed-discovery rule did not apply to toll statute of limitations applicable to borrowers' RICO claim, although borrowers alleged that they were not aware of mortgage company's alleged racketeering activity, where borrowers did not suggest any particular effort by

mortgage company to hide its alleged wrongdoing, and borrowers should have been aware that they were injured by the allegedly illegal and discriminatory loans), *modified on other grounds*, 147 F. Supp.2d 1 (D.C. Cir. 2001). Acosta's RICO claims are due to be dismissed (alternatively) on statute of limitations grounds.

***Immunity***

The Law Office contends its activities occurred during the course of litigation in the foreclosure action and it is entitled to absolute immunity from Acosta's RICO claims under Florida's litigation privilege, citing *Spitalny v. Insurers Unlimited, Inc.*, No. 2:05cv12FTM-29SPC, 2005 WL 1528629 (M.D. Fla. June 24, 2005). Acosta responds that the privilege provides immunity only for conduct during judicial proceedings and not for acts outside of those proceedings. Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings. *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1274 (11th Cir. 2004). Florida's litigation privilege applies to the state-law tort claims adjudicated in federal court. *Id.* at 1275. The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings, and would most likely include events taking place outside the courtroom during discovery. *Id.* at 1276. While the Florida litigation privilege clearly applies as a defense to state tort claims, *see Jackson*, 372 F.3d at 1276, it is not clear that the Florida litigation privilege applies to RICO or other statutory claims in the Eleventh Circuit. *See Florida Evergreen Foliage v. E.I. Dupont De Nemours*, 336 F. Supp.2d 1239, 1267 (S.D. Fla. 2004) (there is no controlling case applying the Florida litigation privilege to RICO claims). The parties have not adequately briefed the matter for the Court to resolve the issue of whether the litigation privilege applies to RICO claims, one of first impression in this circuit, at the motion to dismiss stage.

### V.  FDCPA, FCCPA (COUNTS III AND IV)

CitiMortgage and the Law Office seek dismissal of Acosta's FDCPA claims, and his claims under the parallel Florida statute, the Florida Consumer Credit Protection Act, for failure to state a claim upon which relief can be granted[10].  Acosta alleges that CitiMortgage/Citibank and the Law Office violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 by failing to communicate that his debt was disputed, by repeatedly failing to disclose that communications were from a debt collector, by serving Acosta with a summons in an improper manner and time, and by improperly filing the foreclosure action.  Doc. No. 103 ¶ 133.

Congress enacted the Federal Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U .S.C. §§ 1692d, 1692e, 1692f.  The FDCPA applies  to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts[11], or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

---

[10]Acosta's allegations of Defendants' violations of the FCCPA are virtually identical to his allegations of violations of the FDCPA.  *Compare* Doc. No. 103 ¶ 133 & ¶ 153.

[11]The Federal Debt Collection Practices Act defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Title 15 U.S.C. § 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt.  15 U.S.C. § 1692e.  Acosta alleges that Defendants violated § 1692c and 1692e by failing to communicate to credit reporting agencies and others that his debt was disputed; by repeatedly failing to disclose that their communications sent to Acosta were from a debt collector and information obtained would be used for that purpose; and by communicating with a third-party information about the debt without Acosta's consent.  Doc. No. 103 ¶¶ 133(a), (b), (c).  Section 1692e(8) prohibits communications to any person "credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).

On July 14, 2003, Acosta sent a notice of dispute and debt verification request to the Law Office.  Doc. No. 103 ¶ 82.  On the same day that the verification request was received, July 16, 2003, the Law Office filed the foreclosure suit against Acosta.  Doc. No. 103 DD-7.  On August 12, 2003, Acosta filed an answer and sent a letter to the Law Office asserting his rights under the FDCPA.  *Id.* ¶ 100.  On October 2, 2003, the Law Office sent a letter with information about Acosta's debt to Marshall C. Watson, P.A.  *Id.* ¶ 121, Ex. DD- 24.  Acosta alleges that he has checked with at least three credit reporting agencies and the Law Office and CitiMortgage/Citibank have not disclosed to the credit reporting agencies that Acosta is disputing the debt at issue.  *Id.* ¶ 122.  Defendants contend that pursuant to § 1692c(b), communications to consumer reporting agencies are not included under 15 USC § 1692e(8).  Acosta claims there is no specific exemption in this section for credit reporting agencies.

Under FDCPA provisions governing communications "in connection with debt collection," debt collectors may not communicate with third-parties about the debt without Acosta's consent,

except that a debt collector may communicate with a consumer reporting agency if otherwise permitted by law. 15 U.S.C. § 1692c(b). However, "[t]he FDCPA does not prohibit a debt collector from communicating to agencies, and a communication, in and of itself, to a consumer reporting agency, does not support a cause of action under the FDCPA." *See In re Creditrust Corp.,* 283 B.R. 826, 832 (Bkrtcy. D.Md. 2002) (citing 15 U.S.C. § 1692(c)(b)).

Communications with consumer reporting agencies is "otherwise permitted by law" as specifically set forth in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Section 1681s-2(a) regulates the responsibilities of furnishers of information, like CitiMortgage, to consumer reporting agencies to provide accurate information including notice of a consumer's dispute[12]. 15 U.S.C. § 1681s-2(a). Acosta cannot state a claim under this portion of the FCRA because there is no private right of action to enforce the obligations established by § 1681s-2(a); those obligations must be enforced by federal and state officials. *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir. 2002) (private enforcement under §§ n & o is excluded); *see also Redhead v. Winston & Winston P.C.,* No. 01 Civ. 11475, 2002 WL 31106934, *4 (S.D. N.Y. Sept. 20, 2002).

However, a debt collector may be liable under the FDCPA if it fails to communicate to a consumer reporting agency that a debt is disputed. *See Ryan v. Wexler & Wexler*, 113 F.3d 91, 92 (7th Cir. 1997) (plaintiff stated a claim under the FDCPA for debt collector's failure to communicate to credit reporting agencies that his account was disputed); *Semper v. JBC Legal Group*, __ F. Supp. 2d __, 2005 WL 2172377, *3 (W.D. Wash. Sept. 6, 2005) (debt collector's failure to communicate to credit bureau that dishonored check debt was disputed violated the statute). Whether Defendants

---

[12]Although Acosta could bring a private action under § 1681s-2(b), which imposes additional duties once the furnisher of information receives notice of the consumer's dispute from a credit reporting agency, he has not alleged that he contacted the credit reporting agencies to dispute the foreclosure, or that the credit reporting agencies notified CitiMortgage that Acosta was disputing the debt.

failed to communicate to credit reporting agencies that the debt was disputed, or they did communicate such information but the credit reporting agencies did not include the information, is a factual issue which may be resolved at a later stage in the litigation, but at this preliminary stage of the litigation, Acosta's claim under ¶ 133(a) survives dismissal.

Defendants' communication with the Law Offices of Marshall C. Watson, P.A., about the debt, done without Acosta's consent, may state a claim for violation of the FDCPA unless an exception applies. Defendants contend that this communication does not state a claim for violation of the FDCPA because it was a confidential payoff letter provided at the request of Watson, P.A., who is the attorney for another creditor, the second mortgage holder, involved in the foreclosure. Attorneys for creditors are excluded from application of the FDCPA, *see* 15 U.S.C. § 1692c(b). As a practical matter, in a state foreclosure action, the first and second mortgage holders and other creditors must be able to communicate regarding the balance or settlement of the outstanding mortgages. Acosta's claim under ¶ 133(c) is due to be dismissed.

Acosta also claims Defendants violated the FDCPA by repeatedly failing to disclose that their communications sent to Acosta were from a debt collector. Acosta alleges that motions and discovery documents were sent to him in the course of collecting the disputed debt without the required statutory notice to the consumer pursuant to 15 U.S.C. § 1692e(11). Pursuant to § 1692e, a debt collector must disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt. 15 U.S.C. § 1692e(11). As Defendants point out, only the initial communication must disclose it is from a debt collector *and* the debt collector is attempting to collect a debt. *See id.* After the initial communication, the debt collector need only state that the communication is from a debt collector.

Subsection 11 excepts "formal pleadings made in connection with a legal action" from the requirements. Acosta contends that "all motions, responses to motions, responses to discovery, notices, and other non-pleadings" – in other words, documents generated in the foreclosure litigation– should have indicated they were generated by a debt collector. Once the initial pleading in the foreclosure lawsuit was filed, Acosta had ample notice that the foreclosure was instigated by the debt collecting law firm. Regardless of the technical definition of "pleading" in other contexts, the purpose of this exception is plain. Acosta's claim under ¶ 133(b) is due to be dismissed.

Acosta contends that Defendants violated § 1692g and 1692c by failing to provide verification of the debt as required by federal law and by failing to cease collection activities prior to providing the verification; by continuing debt collection efforts after Acosta had disputed the debt in writing pursuant to § 1692g debt validation rights; by serving him with a summons in a manner that "overshadowed the notice of validation rights which would create confusion for a least sophisticated consumer about his rights" because the notice was found on page nine of the summons and complaint; and by serving him at 7:20 a.m., a time allegedly disallowed. Doc. No. 103 ¶¶ 133(d), (e), (f).

On July 14, 2003, Acosta sent a "Notice of Dispute and Debt Validation Request" seeking verification of the alleged debt to the Law Office; it was delivered on July 16, 2003. Doc. No. 103 ¶ 82; Ex. DD-2 (certificate of service); DD-7. The Law Office filed the foreclosure suit against Acosta on July 16, 2003, the very same day. *Id*. ¶ 84. Acosta contends that Defendants failed to provide verification of the debt as required by the FDCPA and failed to cease collection activities prior to providing the verification. Defendants contend that Acosta's letter mailed on July 14, 2003 did not trigger an obligation to verify the debt under § 1692g(b). Doc. No. 103, Ex. DD-2. Under § 1692g(b), "[i]f the consumer notifies the debt collector in writing within the thirty-day period [of the initial communication] that the debt . . . is disputed . . . the debt collector shall cease collection of the

debt . . . until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy . . . is mailed to the consumer." 15 U.S.C. § 1692g(a) & (b).

The Law Office did not send Acosta an "initial communication" or information on disputing the debt prior to filing the foreclosure suit.  However, the FDCPA does not impose on a debt collector the obligation to provide information regarding a dispute notice to a debtor prior to filing suit. *Sprouse v. City Credits Co.,* 126 F.Supp.2d 1083, 1089 (S.D. Ohio 2000).  Acosta contends that the foreclosure complaint (filed on July 16, 2003) constituted an initial communication and his July 16, 2003-delivered letter gave notice of the dispute.  The Eleventh Circuit has held that a legal action, a summons and complaint, does not constitute a "communication" in connection with collection of a debt under the FDCPA; thus, the Law Office was not required to wait thirty days before proceeding with the suit.  *See Vega v. McKay*, 351 F.3d 1334, 1336-37 (11th Cir. 2003) (discussing FTC commentary that states institution of formal legal action against a consumer is not a communication in connection with collection of any debt).  By the same token, Acosta's claims that the notice on page nine of the summons[13] "overshadowed the notice of validation rights which would create confusion for a least sophisticated consumer about his rights" (§ 133(e)) and service of the summons at 7:20 a.m. (¶ 133(f)) violating the statute are without merit because the summons and complaint are not "initial communications" under the FDCPA.  *See id.*  On these points, the Motions to Dismiss are due to be granted.

The only remaining issue under the FDCPA is whether Acosta's verification request which arrived on July 16, 2003 arrived in time to give notice to the Law Office that Acosta disputed the debt

---

[13]Acosta relies on the holding of *In re Martinez*, 266 B.R. 523, 533 (Bankr. S.D.Fla. 2001), *aff'd*, 311 F.3d 1272 (11th Cir. 2002) for the proposition that the summons and complaint constitute and initial communication and the statutory notice on page nine violated the FDCPA.  The Eleventh Circuit in *Vega* discussed *Martinez* and placed any such reading of that case in doubt.  *Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003).

– so as to stay collection efforts – and postpone the filing of the foreclosure suit against Acosta, which was also filed on July 16, 2003.  A debt collector is free to file suit when collecting on a debt *unless* the debtor timely disputes the debt.  *See  Shimek v. Weissman, Nowack, Curry & Wilco, P.C.,* 374 F.3d 1011, 1013 (11th Cir. 2004) (a debt collector may file a lien *before* a consumer has made any request for verification); *see also Sprouse v. City Credits Co.,* 126 F.Supp.2d 1083, 1089 (S.D. Ohio 2000); *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir. 1997) ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor").  It is very possible that Acosta's dispute notice arrived on the same day *after* the foreclosure suit was filed and the Law Office was unaware of it before the suit was filed.

Read in the light most favorable to Acosta, he states a claim for violation of the FDCPA if the Law Office was aware of his dispute of the debt and request for verification and filed the lawsuit anyway or took other actions in furtherance of the litigation.  *See, e.g., Anderson v. Frederick J. Hanna & Associates,* 361 F.Supp.2d 1379, 1383 (N.D. Ga. 2005) (debt collector violated FDCPA when it filed a lawsuit after request for verification had been made); *McDaniel v. South & Assoc.*, 325 F.Supp.2d 1210, 1218 (D. Kan. 2004) (judicial foreclosure and suit against individual debtor filed one week after debt collector received request for verification and three weeks before it mailed verification information to debtor violated FDCPA).

However, a number of courts have held as a matter of law that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA.  *Beadle v. Haughey*, No. Civ.04-272-SM, 2005 WL 300060 (D. N.H. Feb. 9, 2005) and *cases cited therein* ("it seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA").  "Security enforcement activities fall outside the scope of the FDCPA because they are not debt collection

practices." *Rosado v. Taylor*, 324 F. Supp.2d 917, 924 (N.D. Ind. 2004) (citing 15 U.S.C. § 1692a(6)).     Because the parties did not brief the issue of whether foreclosure of a mortgage even constitutes debt collecting activity under the FDCPA – and if it does, which factual issues[14] remain – it is a matter that must be decided at the summary judgment or trial stage.   To the extent the Motions to Dismiss seek dismissal of Acosta's claims in § 133(d), they are denied without prejudice to reassertion at the summary judgment stage.

Acosta contends that Defendants violated § 1692e by filing the foreclosure suit in the name of a party not entitled to sue him, *i.e.*, parties without legal standing to foreclose; and by filing multiple pleadings in the foreclosure action containing misrepresentations of fact. Doc. No. 103 ¶¶ 133(g), (h), (i). Acosta misconstrues CitiMortgage's transfers of the mortgage and promissory note to the related entity Citibank as a violation of the FDCPA.

Acosta contends that the initial foreclosure complaint identified the holder of the mortgage as CitiMortgage, Inc. rather than its corporate parent entity, CitiBank, FSB, the then-holder of the mortgage note.  Defendants contend that the holder of the mortgage at the time the foreclosure suit was filed was CitiMortgage, Inc.  Doc. No. 103, Ex. DD-8, DD-17; Ex. B to Complaint to Foreclose Mortgage.  Based on the allegations in the Third Amended Complaint and the documents incorporated therein, the Court agrees.

MCA was the original mortgage holder, who assigned the mortgage to "Citicorp Mortgage, Inc[15]." on March 24, 2000.  *Id*. Ex. DD-8; ¶ 32.  The Promissory Note was negotiated on the back of the Note as payable to the order of Citicorp Mortgage, Inc. Doc. No. 108, DD-20.  At some point later,

---

[14]The sufficiency of the verification that the Law Office provided, *if* such verification is even required in a foreclosure action, is also a factual issue to be decided at the summary judgment stage or at trial, not in considering a motion to dismiss.

[15]It is undisputed that CitiMortgage, Inc. was formerly known as Citicorp Mortgage, Inc.

the Promissory Note was made payable to the order of Citibank, FSB (*id.*), but the First Mortgage remained in the name of Citicorp Mortgage, Inc.  On July 16, 2003, CitiMortgage, Inc. filed the foreclosure suit against Acosta. Doc. No. 103, Ex. DD-17.  The discrepancy came to the state court's attention, and it dismissed Citicorp Mortgage, Inc.'s original complaint because it had failed to "join an indispensable party, to wit: Citibank, FSB."  Doc. No. 103, DD-19.  The state court allowed CitiMortgage to file an amended complaint.  *Id*.  On September 7, 2004, CitiMortgage, Inc. f/k/a Citicorp Mortgage, Inc. rectified the discrepancy and assigned the First Mortgage to Citibank, FSB (*id.* Ex. DD-21 att.) and filed an Amended Complaint.

Defendants' conduct in the foreclosure suit is not properly before this Court, since Acosta's remedy for their alleged "misrepresentations" or standing to sue is properly before the state court hearing the foreclosure.  Obviously, Acosta had an appropriate remedy in state court, because the court addressed the standing issue and dismissed the original foreclosure complaint for failure to join Citibank, FSB.  Moreover, based on the facts as alleged by Acosta, he cannot state a claim for "a false representation of the character, amount, or legal status of any debt" because the First Mortgage was concededly held by CitiMortgage, Inc. f/k/a Citibank Mortgage, Inc., even if the corresponding Promissory Note was not (at that time).  As such, CitiMortgage had standing to sue and the representations made were not false.  *See Orenbuch v. North Shore Health Systems, Inc.*, 250 F.Supp.2d 145, 152 (E.D. N.Y. 2003) (affiliated, but separate, entities may properly collect a creditor's debts without violating the FDCPA).  At most, the foreclosure pleadings were defective for failure to name Citibank FSB, which the state court allowed CitiMortgage to correct, but they do not rise to the level of false representations.   Acosta's claims in ¶ 133(g), (h), and (i) are due to be dismissed.

### VI.  FDUPTA (COUNT V)

Defendants contend that Count V, brought under the Florida Deceptive and Unfair Trade Practices Act ("DTPA"), should be dismissed because the Act does not apply to the sale and purchase of real estate, citing *Larry Kent Homes, Inc. v. Empire of America FSA*, 474 So.2d 868, 869 (Fla. 5th DCA 1985), *rev. denied*, 484 So.2d 7 (Fla. 1986). However, the DTPA was modified in 1993 to broaden the Acts' definition of "trade or commerce" to include the sale "of any property," and at least one Florida appellate court has acknowledged that the amended Act encompasses real estate sales. *Fendrich v. RBF, LLC,* 842 So.2d 1076, 1079-80 n.2 (Fla. 4th DCA 2003) (holding that a reservation for the purchase of real estate can constitute a deceptive trade practice). More recently, at least one Florida appellate court considering claims by mortgagors against a collection agency for the lender allowed the claims to go forward under the DTPA. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 896 So.2d 773, 777 (Fla. 1st DCA 2004) (reinstating DTPA claims by a class of defaulting mortgagors suing law firm handling foreclosure proceedings over inflated costs to reinstate mortgages); *see also Chase Manhattan Mortg. Corp. v. Porcher*, 898 So.2d 153, 156 (Fla. 4th DCA 2005) (holding that plaintiffs with claims against lender for wrongful assessment of late fees on mortgages could not be certified as a class action but implicitly ruling they could be brought under DTPA as individual claims).

Although a mortgagor might otherwise be able to state a claim arising for relief under the DTPA for a lender or debt collector's conduct arising out of the mortgage negotiations or the collection efforts, Acosta's Third Amended Complaint fails to do so. In Count V asserting his DTPA claim, Acosta merely regurgitates the same allegations *verbatim* that he asserted for violations of the FDCPA and RICO claims, including the citations to those federal statutes, and fails to even reference the DTPA. *See* Doc. No. 103 ¶ 174-76. Acosta states no specific facts whatsoever in support of his claim for violation of the DTPA. Given that this is Acosta's fourth attempt in more than twelve

months to state a claim under the DTPA, he is not entitled to any further amendments and Acosta's claim under the DTPA should be dismissed with prejudice.

### CONCLUSION

Acosta has completely failed to plead a RICO claim. He has alleged no facts to sustain a claim for civil recovery under RICO, and the facts that have been alleged demonstrate conclusively that no such claim could be proven. The Court finds that Acosta would not be entitled to recovery under any set of facts that could be proven consistent with the allegations in his Third Amended complaint. To the extent that Defendants' Motions to Dismiss seek to dismiss Acosta's federal and Florida RICO claims (Counts I and II) and his FDUTPA claim (Count V), it is **RECOMMENDED** that the Motions to Dismiss be **GRANTED in part** and that those claims be **DISMISSED with prejudice**.

To the extent Defendants seek to dismiss Acosta's FDCPA and Florida Consumer Credit Protection Act claims (Counts III and IV), it is **RECOMMENDED** that they be **GRANTED** in part and **DENIED** in part, with Acosta's claims in ¶¶ 133(b), (c), (e), (f)-(i) being **DISMISSED** with prejudice and only Acosta's two claims in ¶¶ 133(a) and (d) be allowed to go forward.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 4, 2005.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy